## KIMBALL v. GAFFORD *et al.*

**Receivers :** POSSESSION OF PROPERTY OF THIRD PARTIES : EQUITABLE RELIEF. Defendant was appointed receiver for a company engaged in negotiating loans, and there came into his hands, as such, certain bonds and mortgages which plaintiff had agreed to take, and which he had paid the company for, but which were not at the time of the agreement and payment fully executed; and it is true that if the papers had not been ·executed in accordance with the agreement, or if they had been defective in any respect, he would not have been obliged to take them; but there is no question of that kind in this case. Defendant had received payment on some of these securities. Plaintiff brings this action to recover the unpaid securities remaining in the receiver's hands, and the money collected on the others, as his special property, which the receiver was not entitled to hold as assets of the company. *Held* that he was entitled to recover,—the contract between him and the company

being, in effect, the purchase of certain property not then in exist-ence, but which the company agreed to procure and deliver; which contract was a valid one (see opinion for citations), and vested in plaintiff a special property in the securities which the appointment of the receiver did not divest, and which a court of equity will protect.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FILED, JUNE 3, 1889.

ON the thirty-first day of July, 1885, the Des Moines National Bank filed its petition at law, claiming from the American Mortgage and Investment Company the sum of ten thousand dollars, alleged to be due on two accepted drafts. On the same day it commenced in the same court, and against the same defendant, a suit in equity in aid of the action at law, and procured the appointment of S. B. Gafford as receiver of the property of said company. On the fourth day of April, 1887, J. F. Kimball intervened in the equitable action, claiming to be the owner of certain bonds and mortgages which had passed into the hands of the receiver, and asking equitable relief, including an order to turn over to him the property in question. The receiver answered Kimball's petition of intervention. A trial on the merits resulted in the dismissal of Kimball's petition, and in a judgment in favor of the receiver for costs. Kimball appeals.

*Gatch, Connor & Weaver*, for appellant.

*Kauffman & Guernsey*, for appellee.

ROBINSON, J.—This proceeding arose in the equit-able action of the Des Moines National Bank *v.* Amer-ican Mortgage and Investment Company, and is properly a part of it. Joseph Gafford and others also intervened in that action, but, since their intervention presents no question which needs to be determined in disposing of this appeal, their claims will not be considered.

It appears that the American Mortgage and Investment Company was engaged in the business of making loans and selling securities. It had an office in Des Moines, and another in Boston. One of the methods it adopted in making loans was substantially as follows: The borrower was required to sign an application for a loan, naming the company as its agent to procure it. The application, when signed, was designed to show the name and address of the borrower, the amount of money he desired, the rate of interest he expected to pay, the time of maturity of the loan, his financial condition, the description and value of the land he intended to mortgage to secure the loan, and the kind and value of the buildings thereon; also other facts, which need not be mentioned. The application was received from the borrower at the Des Moines office, and a copy thereof was sent to the Boston office. The persons in charge of the Boston office would then attempt to procure a purchaser for the loan on the showing made by the application, and the reports of the appraisers and inspector of the property which accompanied and formed a part of it. If the application was approved, and a purchaser found, a bond, with interest coupons attached, payable to the company, was made, a mortgage securing the same was executed, an abstract of title was prepared, and sometimes an insurance policy was delivered. Commission notes and a second mortgage were also given to the company, as a part of the transaction, to compensate it for its services. When the papers were completed they were forwarded to the eastern office, and, if satisfactory, were delivered to the purchaser. The securities involved in this action are a bond for nine hundred dollars, with coupons, dated June 25, 1885, and mortgage securing the same, executed by David S. Sanders; similar papers of the same date for three hundred and fifty dollars, executed by Harden Trenary; similar papers, dated June 30, 1885, for seven hundred dollars, executed by Christopher Hoover, and similar papers, dated June 15, 1885, for six hundred dollars, executed by Samuel Gast. On the eleventh day of June, 1888,

Kimball examined a copy of the Gast application, agreed to take the loan, and paid the company six hundred dollars for it. On the twenty-second day of the same month the company held to the credit of Kimball thirteen hundred dollars, which he had advanced for securities he had not received. On that day he examined copies of the applications of Sanders, Hoover and Trenary, agreed to take the loans, and paid the company the balance in its hands, and six hundred and fifty dollars in addition, therefor. At that time the Trenary application was for but three hundred and twenty-five dollars; but it was agreed that the loan should be made for three hundred and fifty dollars, and, if that was not done, that the difference should be adjusted. The matter of interest was also to be adjusted when the papers were delivered. The four loans specified were made according to the method we have indicated, but the papers were never delivered to Kimball, although the loans were complete, and the money was paid to the borrowers. They fell into the hands of the receiver, and the Gast loan and some interest on the Sanders loan have been collected by him. It is claimed by appellee that the money paid by appellant to the company was in the nature of a general deposit; that he had not purchased any of the paper in controversy when the receiver was appointed, and had made no agreement which made him liable to take it, or any part of it; and that he is now only a general creditor of the company. But the evidence shows quite clearly that he agreed to take the identical paper in controversy, and that he paid for it when the agreement was made, leaving for adjustment certain matters of minor importance. It is true, if the papers had not been executed in accordance with the application and his agreement, or if they had been defective in any respect, he could not have been compelled to accept them; but there is no question of that kind in this case. The transaction between Kimball and the company was, in effect, an agreement by which he agreed to accept certain property, not then in existence, but which the company agreed to

procure and deliver. It is the settled law of this state that such an agreement is valid, and will be enforced. *Wheeler v. Becker*, 68 Iowa, 724, and cases therein cited. See, also, 1 Benj. Sales, secs. 81, 83; 2 Story Eq. Jur., sec. 1040; *Pennock v. Coe*, 23 How. 117. The appellant has a special property in the securities in controversy which the appointment of the receiver did not divest, and which a court of equity will protect. No adverse rights have been acquired by third parties, and we are of the opinion that appellant is entitled to the relief which he demands. The receiver should surrender so much of the paper in controversy as has not been paid, and should pay to appellant all moneys collected. A decree will be entered in accordance with our conclusions.                                             REVERSED.