NELSON M. GAY *vs.* GEORGE W. RAY & others.

Suffolk.    January 16, 1907. — March 1, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets. *Bankruptcy. Partnership.*

Under R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, the rule of *Snyder* v. *Smith*, 185 Mass. 58, that a temporary injunction on a bill to reach and apply equitable assets of the principal defendant in payment of his debt to the plaintiff issued more than four months before an adjudication of bankruptcy creates a lien good against the trustee in bankruptcy, applies to the interest of the principal defendant in a partnership adjudicated bankrupt which is contingent on there being assets of the partnership in excess of the partnership debts.

A temporary injunction issued in a suit in equity under R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, to reach and apply in payment of a debt to the plaintiff, not reduced to a judgment, the interest of the principal defendant in a certain partnership, merely enjoins the withdrawal of any part of the principal defendant's share or interest in the business of the partnership and does not forbid the further prosecution of that business, and the defendant partners may carry on their business as before, may dispose of their stock and buy new merchandise, may pay off old debts and incur new ones, and the shares of all the partners remain subject to the ordinary hazards of business. The interest of the principal defendant which the plaintiff can reach by his bill is only in such surplus as may remain after all the partnership debts new as well as old have been discharged, and whether there is such a surplus must be determined by the settlement of all debts and accounts of the partnership in existence when the court interposes and takes possession of the partnership property through a receiver appointed to wind up the partnership affairs.

In a suit under R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, to reach and apply in payment of a debt to the plaintiff, not reduced to a judgment, the interest of the principal defendant in a certain partnership, a temporary injunction issued. Later a final decree was made establishing the debt and ordering the application to its payment of the interest of the principal defendant in the partnership, and still later a receiver of the property of the partnership was appointed. About two years after the issuing of the temporary injunction the partnership was adjudicated bankrupt, and the trustee in bankruptcy of the partnership filed an intervening petition in the suit, praying that the receiver should be ordered to deliver the property to him. *Held,* that if the parties could agree that the final liquidation of the partnership would show that the partnership property was insufficient to pay the partnership debts, the receiver after the payment of his fees and charges should turn over the property and assets in his hands to the trustee in bankruptcy; that if, on the other hand, the parties should agree that after the liquidation of the partnership there would be a balance left in which the principal defendant had an interest, the application of the trustee in bankruptcy should be denied, and the receiver should proceed to wind up the business, so far at any rate as to determine the value of the interest of the principal defendant in the balance, and to pay the amount of that interest to the plaintiff so far as necessary to satisfy his demand, and then should turn over the remainder of the balance to the trustee in bankruptcy; but that, if the parties were unable to agree whether there would be a balance or not, the trustee in bankruptcy must be allowed to become a party to the suit, and the receiver must wind up the partnership business, and the amount of the partnership debts must be ascertained, before final action could be taken; and that in any event the disbursements made by the receiver and the proper fees for his services should be ascertained and he should not be ordered to turn over the property in his hands until these had been paid either out of the fund or otherwise.

In a suit in equity under R. L. c. 159, § 3, cl. 7, as amended by St. 1902, c. 544, § 23, to reach and apply in payment of a debt to the plaintiff, not reduced to a judgment, the interest of the principal defendant in a certain partnership maintaining a store in Boston, a temporary injunction issued enjoining the withdrawal of the principal defendant's share or interest in the business of the partnership but not enjoining the defendant partners from carrying on their business or forbidding them to carry on stores in other places. The plaintiff alleged that the defendant partners after the issuing of the temporary injunction withdrew a part of the partnership assets in cash and merchandise and employed such assets in carrying on a store in a city outside the Commonwealth. *Held,* that whether the business done in the store outside the Commonwealth should be included in determining the value of the share of the principal defendant in the assets of the partnership depended on whether the business carried on in the city outside the Commonwealth should be found to be simply an extension of the original partnership business, as alleged by the plaintiff, or whether, although carried on by the same partners, it was a new and independent venture unconnected with the original partnership.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 5, 1904, under R. L. c. 159, § 3, cl. 7, to reach and apply to the payment of a debt owed by the defendant Ray to the plaintiff the interest of Ray in a partnership called the

George W. McPherson Store Company and in shares of stock held by Ray in a corporation called the Coe-Ray-Creelman Company.

On February 6, 1904, a temporary injunction was ordered, and a writ of injunction issued, restraining the defendants from the sale, withdrawal or other disposition of any portion of the defendant Ray's share or interest as a copartner in the property of the partnership of the George W. McPherson Store Company until further order of the court or of some justice thereof. The writ of injunction was served upon each of the defendants upon the same day.

The case was heard by *Lathrop*, J., who on June 27, 1904, made a decree establishing the debt in the sum of $5,484.76, which the defendant Ray was ordered to pay, and ordering that upon its non-payment the interest of the defendant Ray in the partnership be reached and applied as prayed for in the bill.

The defendant appealed, and this court in a decision reported in 189 Mass. 112 ordered that the decree be confirmed. On September 19, 1905, a final decree was entered in accordance with the rescript. On December 22, 1905, upon motion of the plaintiff a receiver of the property of the partnership was appointed, who took possession of the property and thereafter held it. On January 11, 1906, an involuntary petition in bankruptcy was filed against the partnership, the partnership was adjudged bankrupt and Frank M. Hill was appointed trustee in bankruptcy of the partnership. Thereafter Hill, as such trustee, filed an intervening petition in the suit, praying that the receiver be ordered to deliver the property to him. This petition and the answer of the plaintiff thereto were referred to Winfield S. Slocum, Esquire, as master, to hear the parties and their evidence, to find the facts and to report them to the court. The master filed a report concluding as follows:

"The plaintiff contended that by virtue of the temporary injunction of February 6, and the final decree entered June 27, 1904 (each more than four months before the proceedings in bankruptcy), he was entitled to have the assets held and applied to the satisfaction of his debt as against the trustee in bankruptcy.

"I admitted evidence as to the value of the property of the

firm upon each of the dates of February 6 and June 27, to determine whether there was any valuable interest therein of the defendant Ray which could be applied in satisfaction of the debt.

" This evidence was admitted against the objection of the petitioner, the trustee in bankruptcy.

" The business was dealing in furnishing goods, hats, caps and like property in a store at the corner of Hanover Street and Elm Street in Boston, and had been for a long time established there. It was purchased by the defendants in April, 1902, and has continued to the present time, the receiver conducting it since his appointment.

" On February 15, 1904, the manager of the store made a financial statement as follows:

" 'Cash on hand . . . . . . . . . . . $601.66
Stock of goods. . . . . . . . . . . 12,308.54
Fixtures . . . . . . . . . . . 1,783.00
        Making a total of . . . . . $14,693.20

Liabilities:
Merchandise, payable . . . . . $6,925.22
Notes . . . . . . . . . . . . . 1,700.00
        Total . . . . . . . . . $8,625.22 '

" This statement shows a balance of assets over liabilities to the amount of $6,067.98.

" The financial condition of the store was substantially the same upon February 6, 1904, when the temporary injunction issued and was served.

" This financial statement appears to have been somewhat inflated for the purpose of making a good showing to obtain credit.

" The firm had a lease of its place of business for the term of five years from May 1, 1902, at a yearly rental of $5,300. This lease, by reason of the high rent, was not of any salable value.

" The business was an old established one, and its good will was of some value.

" Upon June 27, 1904, the stock of goods in the store was somewhat larger than upon February 6, but the value of the

business did not vary greatly from the former statement, and, if anything, the stock would be somewhat larger.

" I find if the business had been closed out and its property disposed of at a forced sale upon either of said dates it would probably not bring more than the liabilities, but as a going concern it was of value, and probably at said dates would be worth more than the above liabilities.

" The debts named in the financial statement have since been paid, but other liabilities have been incurred.

" The plaintiff offered evidence in support of the allegations contained in the seventh, eighth, ninth, tenth and eleventh paragraphs of his answer, but I deemed these allegations not to be material to the questions raised upon the matters referred to me, and I excluded such evidence.

" The plaintiff also offered evidence that subsequent to July 1, 1904, the defendants, copartners, opened and conducted a retail store similar to the Boston store at Pawtucket, Rhode Island, this store being known as ' The George Oliver Store,' but I excluded such evidence."

The trustee in bankruptcy took the following exceptions to the master's report :

1. As to the value of the property of the firm upon each of the dates of February 6 and June 27, 1904.

2. As to the payment of the debts named in the financial statement.

The plaintiff took the following exceptions to the master's report :

First. To the ruling of the master as matter of law that evidence offered in support of the allegations contained in the seventh paragraph of the plaintiff's answer was immaterial.

[The paragraph referred to alleged that when the decree after the rescript was entered on September 9, 1905, the George W. McPherson Store was solvent, and there remained, over and above all outstanding liabilities, assets the property of Ray as partner, which were seized by the entering of that decree.]

Second. To the ruling of the master as matter of law that evidence offered in support of the allegations contained in the eighth paragraph of the plaintiff's answer was immaterial.

[The paragraph referred to alleged that when the decree was

entered appointing the receiver, and the receiver was qualified and took possession on December 2, 1905, the George W. McPherson Store was solvent, and there remained, over and above all outstanding liabilities, assets the property of Ray as partner, which were seized by the entering of that decree.]

Third. To the ruling of the master as matter of law that evidence offered in support of the allegations contained in the ninth paragraph of the plaintiff's answer was immaterial.

[The paragraph referred to alleged that all creditors of the George W. McPherson Store outstanding on February 6, 1904, had been satisfied and paid; and that the plaintiff's interest in one half of the assets of the George W. McPherson Store was superior to all claims of creditors of that store since the date of the injunction, February 6, 1904.]

Fourth. To the ruling of the master as matter of law that evidence offered in support of the allegations contained in the tenth paragraph of the plaintiff's answer was immaterial.

[The paragraph referred to alleged that Ray and Creelman, in spite of the injunction, and after its service, each withdrew from the assets of the George W. McPherson Store about $2,200 in cash, and also upwards of $2,400 in cash and merchandise on account of another business known as "The George Oliver Store" owned and managed by Ray and Creelman as copartners at Pawtucket in the State of Rhode Island; that all such withdrawals were contrary to the injunction of this court, and had worked an injury to the rights of the various parties in the premises; but that any injury thereby accruing must be in the first instance borne by the creditors of Ray and Creelman as copartners, whose claims accrued after the filing of this bill and the service of the injunction, rather than by the plaintiff.]

Fifth. To the ruling of the master as a matter of law that evidence offered in support of the allegations contained in the eleventh paragraph of the plaintiff's answer was immaterial.

[The paragraph referred to alleged that Ray was president and manager and the controlling power, and Oliver E. Creelman was secretary, of the Coe-Ray-Creelman Company, a corporation doing business in Boston, which corporation claimed to be the principal creditor of the George W. McPherson Store; that the Coe-Ray-Creelman Company was a party to and received

the benefits of the violations of the injunction of this court, and in its dealings with Ray and Creelman as copartners was to be charged with full knowledge of this proceeding and the rights of Gay therein; that said corporation was also the principal creditor of Ray and Creelman as copartners in the George Oliver Store and was chargeable and had full knowledge of all transactions conducted between the George W. McPherson Store, the George Oliver Store, said corporation, and the several creditors of those stores, and that said corporation and Ray and Creelman were all and severally parties to a scheme of fraud, the purpose of which was to deprive the plaintiff of his rights in the premises by reason of his bill of complaint in this suit and the several proceedings thereunder.]

Sixth. To the refusal of the master to admit evidence " that subsequent to July first, 1904, the defendants, co-partners, opened and conducted a retail store similar to the Boston store at Pawtucket, Rhode Island, said store being known as ' The George Oliver Store,' as bearing upon the issue raised by the pleadings and particularly bearing upon the allegations contained in the thirteenth paragraph of the plaintiff's answer."

[The paragraph referred to alleged that the plaintiff's interest in the property of Ray and Creelman was solely in the partnership property of Ray and Creelman, doing business as the George W. McPherson Store, and that no separate determination of this interest could be had in the United States District Court sitting in bankruptcy.]

The case came on to be heard before *Morton,* J., on the application of Frank M. Hill, trustee in bankruptcy, upon the master's report and the exceptions thereto. The justice overruled the exceptions, and, at the request of the parties, reserved and reported the case for determination by the full court, such order or decree to be entered as law and equity might require.

*J. E. Hannigan & W. A. Knowlton,* (*I. Fox* with them,) for the trustee in bankruptcy.

*M. M. Johnson,* (*A. F. Brewer* with him,) for the plaintiff.

SHELDON, J. We are of opinion that the temporary injunction issued in this case on February 6, 1904, created an equitable lien upon the interest of the defendant Ray in the partnership of the defendants which is valid against the trustee

appointed in bankruptcy proceedings begun on January 11, 1906. We regard this question as settled by the decisions in *Snyder* v. *Smith,* 185 Mass. 58, *Metcalf* v. *Barker,* 187 U. S. 165, and *Pickens* v. *Roy,* 187 U. S. 177. And see 5 Cyc. 365, and the cases there cited. It was assumed that this was the correct rule in *Mauran* v. *Crown Carpet Lining Co.* 23 R. I. 324 ; 6 Am. Bankr. Rep. 734, relied on by the trustee in bankruptcy, though there the equitable lien did not avail because it antedated the bankruptcy proceedings by less than four months.

But the trustee in bankruptcy contends that the rule of *Snyder* v. *Smith, ubi supra,* ought not to govern this case, because here no tangible assets have been attached, but simply an interest depending upon a contingency. He contends that there was no tangible thing to which the lien could attach itself, and draws the inference that for this reason there could be no lien in existence. But this conclusion does not follow. There is no greater difficulty in attaching an equitable lien to an interest which, though contingent, is hereafter to be worked out and made tangible by proceedings in equity, than there is in attaching a common law lien to a tangible and visible entity. So the ordinary attorney's lien upon a judgment obtained by him may be extended by statute to cover a mere cause of action upon its being put in suit. *Smith* v. *Chicago, Rock Island & Pacific Railroad,* 56 Iowa, 720. *Wood* v. *Anders,* 5 Bush, 601. *Kansas Pacific Railway* v. *Thacher,* 17 Kans. 92. Our statute expressly provides that in such a suit as this, " the interest of the defendant in partnership property may be reached and applied in payment of the plaintiff's debt." R. L. c. 159, § 3, cl. 7. St. 1902, c. 544, § 23. Full effect could not be given to this statute and the legislative intent would be frustrated if it should be held that the rule of *Snyder* v. *Smith* did not cover such a proceeding.

The interest of Ray which was held by this process was manifestly his share in the partnership, that is, the balance which would become due to him after the payment of all the firm debts and the adjustment of the accounts of the partners. *Moore* v. *Rawson,* 185 Mass. 264, 272. *Pratt* v. *McGuinness,* 173 Mass. 170, 172. *Sanborn* v. *Royce,* 132 Mass. 594. *Tobey* v. *McFarlin,* 115 Mass. 98. *Foot* v. *Hunkins,* 14 Allen, 15, 17. *Peck* v. *Fisher,* 7 Cush. 386. *Allen* v. *Wells,* 22 Pick. 450, 455,

456. *Hawes* v. *Waltham,* 18 Pick. 451. The statute which gives this remedy expressly provides that unless the bill is brought to recover a judgment debt, " the business of the partnership shall not be enjoined or otherwise interrupted further than to restrain the withdrawal of any portion of the debtor's share or interest therein until the plaintiff's debt is established." R. L. c. 159, § 3, cl. 7. St. 1902, c. 544, § 23. In this case, accordingly, the injunction issued did not forbid the further prosecution of the business; and the defendants were at liberty, until the receiver was appointed on December 22, 1905, to carry on their business as before, and the right to dispose of their stock and buy new merchandise, to pay off old debts and to incur new ones continued; and the interest of both partners remained subject to the ordinary hazards of business. Plainly the rights of new partnership creditors whose claims accrued in the meantime must be superior to the rights of either partner; and it is equally plain that the plaintiff can hold the interest of Ray only as that interest was found to be, when the court finally interposed, took hold of the partnership property through its receiver, and proceeded to wind up the partnership affairs, and so to reach an actual determination of the amount of Ray's interest, — the amount to which he would be entitled after payment of all the firm debts and a settlement of all the partnership accounts. If there is found to be any such interest in existence, the plaintiff is entitled to hold it; if not, the plaintiff's lien is lost by the destruction of the fund upon which it was a charge. The value of Ray's interest must therefore be settled as of the time when it can be actually determined, that is, at the time when the result of the liquidation of all partnership accounts shall have been reached.

It may be that the present state of affairs is such as to make it now evident to the parties whether the final liquidation of the partnership will show that the firm property is insufficient to pay the firm debts or whether there will be a balance left belonging to Ray which the plaintiff can hold. If the former is the case, then, subject to the payment of his fees and charges, the receiver appointed by the justice of this court should turn over the property and assets in his hands to the trustee in bankruptcy. *Mauran* v. *Crown Carpet Lining Co.* 23 R. I. 324.

*Kimball* v. *Gafford,* 78 Iowa, 65.    *Wilson* v. *Parr,* 115 Ga. 629.
*Matter of Lengert Wagon Co.* 6 Am. Bankr. Rep. 535.    *In re
Lesser,* 100 Fed. Rep. 433.    *Wheeler* v. *Walton & Whann Co.* 64
Fed. Rep. 664.    *Winchester* v. *Davis Pyrites Co.* 67 Fed. Rep.
45.   If the latter is the fact, the application of the trustee in
bankruptcy should be denied, and the receiver should proceed to
wind up the business, so far at any rate as to determine the
value of the defendant Ray's interest; and the amount of that
interest should be paid to the plaintiff so far as necessary to
satisfy his demand, and the balance of Ray's interest and the
whole interest of the other partner should be turned over to
the trustee in bankruptcy.   If however the parties are unable to
agree which of these alternatives will turn out to be the true one,
then, in order to preserve the rights of all parties, the trustee in
bankruptcy must be allowed to become a party to the case as
in *Snyder* v. *Smith,* 185 Mass. 58, and the receiver must wind
up the partnership business, and the amount of the partnership
debts must be ascertained; and then final action may be had in
the manner already stated.

For the determination of the issues now involved it does not
seem to be material to ascertain whether either of the defendants
has been guilty of any breach of the injunction issued in the
action.   If such is the case, the court, upon the matter being
brought to its attention in the proper way, will be able to vin-
dicate its authority.   Nor have we before us the means of de-
termining the effect of the opening of the George Oliver store
by the defendants in another State, if this is the fact.   They
were not enjoined from carrying on their business; they were
not forbidden to open other stores in other places, even beyond
the jurisdiction of our State courts.   Whether the business done
in Pawtucket, if there was such business, should be brought into
the firm accounts in the case to affect the value of the defendant
Ray's share must depend upon whether it shall be found that
this business was simply an extension of the original firm busi-
ness, or whether, though carried on by the same partners, it was
in fact a new and independent venture, wholly unconnected with
the original partnership.

In any event, the receiver's proper fees for his services, and
his disbursements, should be ascertained; and he should not be

ordered to turn over the property in his hands to the trustee in bankruptcy until these have been paid, either out of the fund or otherwise. *Wilson* v. *Parr,* 115 Ga. 629. *Mauran* v. *Crown Carpet Lining Co.* 6 Am. Bankr. Rep. 734.

It follows that the exceptions of the trustee in bankruptcy to the master's report should be overruled as immaterial.

The plaintiff's first, second and third exceptions to the report should be overruled, and his fourth, fifth and sixth exceptions should be sustained. If the parties cannot agree upon a decree in accordance with this opinion, the case should be sent back to the master to find and report whether the defendants did open and carry on the business named in the. tenth and eleventh paragraphs of the plaintiff's answer to the trustee's application, and if so, whether such business was a part or extension of the business formerly carried on by the defendants in Boston, or was a new and independent venture of theirs, unconnected with their former partnership; and the receiver should be directed to wind up the firm business and make report to the court of the amount realized therefrom, and to ascertain and report the amount of all outstanding debts of the partnership, including or not including any indebtedness of the Pawtucket business according as it shall appear that such business was a part or extension of the Boston business or that it was independent thereof; and final order to be entered as already stated.

*So ordered.*