JOEL E. BALLENTINE *vs.* CHARLES E. EATON & others.

Middlesex. January 6, 1937. — May 29, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Lien,* Equitable. *Equity Jurisdiction,* To enforce equitable lien. *Limitations, Statute of. Trust,* Real estate trust.

Under the terms of a real estate trust of the nature described in G. L. (Ter. Ed.) c. 182, § 6, exempting the trustees from personal liability, requiring creditors to look solely to trust property for enforcement of their claims, and providing reimbursement and indemnification of the trustees from the trust property for expenditures made and any lia-

bility incurred for its benefit, one who performed work upon the real estate under a contract with the trustees was not in the position of a secured creditor entitled to have specific property charged with payment of his claim, and a suit to enforce an alleged equitable lien, commenced by him more than six years after his claim accrued, was barred by § 2, First, of the statute of limitations, G. L. (Ter. Ed.) c. 260.

BILL IN EQUITY, filed in the Superior Court on January 7, 1936.

By decrees entered by order of *Williams*, J., a master's report was confirmed and the bill was dismissed. The plaintiff appealed.

*E. C. Park*, for the plaintiff.

*M. M. Johnson*, (*M. M. Johnson, Jr.*, & *J. W. Black* with him,) for the defendants Engstrom and others.

*S. W. Saltmarsh*, for the defendant Bowker, submitted a brief.

LUMMUS, J. By an instrument dated and recorded in the Barnstable registry of deeds in December, 1925, there was created for the purpose of developing and dealing in real estate an organization called Cape Cod Real Estate Trust. The defendants Eaton, Carter and Bowker were trustees of the trust. The trustees were empowered, among other things, to "improve, develop, [and] alter" the trust real estate, to make any contracts and instruments which might seem advisable for the carrying out of the purposes of the trust instrument, to employ architects and builders, fix their compensation and define their duties, and in general to deal with the trust property as though owners thereof. The beneficial interest in the trust property was divided into four thousand shares represented by transferable certificates. The trust instrument provided as follows: "The trustees shall have no power to bind the shareholders personally by any contract, express or implied, or by any act, neglect, or default; neither trustees nor shareholders shall be personally liable on or for any contract, act, neglect, or default of the trustees or of the trust, and any party to a contract, or any party affected by such act, neglect, or default, shall have recourse for satisfaction, payment, or indemnity solely to the trust

property. For any proper expenditure by the trustees from their own property, or any liability incurred for the benefit of, or on account of, or in connection with, the trust property, they shall be entitled to reimburse and indemnify themselves from the trust property, and for such reimbursement and indemnification are hereby given a lien upon the trust property subject to such prior encumbrances as they may create." It was provided that "the trustees may act for [by?] a majority and the signatures of a majority on any written instrument shall have the same legal effect as the signatures of all the trustees."

On July 31, 1926, the plaintiff entered into a written contract with the trustees to build a house on lot 65 in Allen's Harbor, Harwichport, part of a large tract owned by the trustees. The contract was signed "Cape Cod Real Estate Trust, by Chas. E. Eaton, Francis E. Bowker, as trustees but not individually." The contract bound the trust *res* but not the trustees personally. *Bowen* v. *Farley,* 256 Mass. 19. *Baker* v. *James*, 280 Mass. 43, 47. *Hawthorne* v. *Austin Organ Co.* 71 Fed. (2d) 945. *James Stewart & Co. Inc.* v. *National Shawmut Bank of Boston,* 75 Fed. (2d) 148. Compare *Tebaldi Supply Co.* v. *Macmillan,* 292 Mass. 384. The plaintiff finished his work on December 11, 1926, and is owed $11,540.04 under the contract.

The present bill seeks to enforce a lien for the satisfaction of the plaintiff's claim, upon the real estate which belonged to the trust in 1926. A master's report which found the facts was confirmed, and the bill was dismissed. The plaintiff appealed.

The trust property is no longer owned by the trustees. On September 7, 1926, they mortgaged it to one Engstrom to secure a loan of $60,000. Engstrom was told that the plaintiff might hold an equitable lien. The plaintiff brought an action at law against the trustees upon his claim on November 24, 1926. On August 3, 1927, the defendant Bowker brought a bill in equity against his cotrustees and Engstrom, and on that bill a receiver of the trust assets was appointed. On September 28, 1927, a decree

was entered allowing Engstrom to foreclose his mortgage notwithstanding the receivership. On November 4, 1927, the foreclosure sale took place, and Engstrom became the purchaser. In February, 1929, he conveyed the entire real property to Allen's Harbor Properties, Inc., a corporation which he controlled. The plaintiff had full knowledge of the receivership, for on September 17, 1927, he gave to the receiver an assignment of his claim in expectation of a settlement by reorganization, and this was returned to him before the foreclosure sale when the reorganization failed of success.

In his action at law against the trustees, the plaintiff had attached by trustee process more than $400 belonging to the trust. On December 5, 1927, the receiver was admitted as a party, and later the plaintiff released the attachment. The action was finally dismissed on June 5, 1933, under Rule 85 of the Superior Court (1932).

. On December 13, 1927, the court in the receivership proceedings ordered "that all creditors of the Cape Cod Real Estate Trust, and all persons having claims of any kind whatever against said trust shall exhibit their claims" to the receiver on or before January 13, 1928, "or be forever barred from sharing in the assets of said trust." This order was published and also mailed to all known creditors. Creditors with claims amounting to $90,648.47 brought in their claims to the receiver within the time limited, but the plaintiff filed no claim. No dividend was paid. The assets in the hands of the receiver amounted to only $1,583.58, and this amount was allowed the receiver for services by the final decree of June 1, 1928, which discharged him as receiver.

The plaintiff continued to prosecute an action against Engstrom, which he had begun on August 16, 1927. On November 14, 1929, the court found for Engstrom, and judgment in his favor was entered on December 9, 1929. On May 22, 1930, the plaintiff by another attorney brought against Engstrom an action of tort based on alleged false representations made by the trustees as his agents. Before September 1, 1932, the plaintiff was told by his attorney

that he could not prevail in that action. On October 20, 1932, the plaintiff consulted his present attorneys. Shortly before December 10, 1935, they conceived the theory of the present bill, and tried unsuccessfully to amend the action of tort into the form of the present bill. Then, on December 30, 1935, they discontinued that action, and on January 7, 1936, brought the present bill.

Without considering other possible defences, we think that the statute of limitations is a bar to the maintenance of the bill. More than nine years elapsed after the completion of the plaintiff's work and the accrual of his claim before he brought this bill. He asserts an equitable lien upon real estate, and contends that such a lien cannot be barred by mere inaction for six years but may be enforced until there has been adverse possession for twenty years. See *Young* v. *Walker*, 224 Mass. 491, 493. We need not consider the soundness of his reasoning, for it is founded on the false premise that he had an equitable lien in the usual sense of a charge upon specific property, entitling the holder of the lien to have the property applied in equity to the payment of his debt as against all other claimants of the property except purchasers for value without notice. *Pinch* v. *Anthony*, 8 Allen, 536, 539. *Bresnihan* v. *Sheehan*, 125 Mass. 11. *Snyder* v. *Smith*, 185 Mass. 58, 62. *Gay* v. *Ray*, 195 Mass. 8. *Westall* v. *Wood*, 212 Mass. 540. *Delval* v. *Gagnon*, 213 Mass. 203. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 156. *Beacon Trust Co.* v. *Dolan*, 27 Fed. (2d) 247. There is no provision of the trust instrument that gives a creditor of the trust the position of a secured creditor. By the execution and performance of his contract the plaintiff acquired one or both of two rights, (1) a right to bring an action at law against the "trust" and attach the trust property, under St. 1926, c. 290, § 5 (G. L. [Ter. Ed.] c. 182, § 6), and (2) a right independent of statute, still existing unless impliedly taken away by the statute just cited, to bring a suit in equity to enforce the contractual obligation of the trust *res*, which in equity may be treated as a debtor. Am. Law Inst. Restatement: Trusts, § 271. *Jessup* v. *Smith*, 223 N. Y. 203. Neither of these rights gave the plaintiff

any priority over other creditors. *Falmouth National Bank
v. Cape Cod Ship Canal Co.* 166 Mass. 550, 567. *Hussey* v.
*Arnold,* 185 Mass. 202, 204. *Ehrlich* v. *Johnson Service
Co.* 272 Mass. 385, 389. Neither interfered with the control
of the property by the trustees, with the sale of it, or with
the creation of paramount liens in favor of others. The
trustees could deal with the trust property as freely as an
individual debtor may deal with his own property. If the
plaintiff had also a right to reach and apply the lien of the
trustees upon the trust property for reimbursement and
indemnification (*Frost* v. *Thompson,* 219 Mass. 360, 365;
*Tomlinson* v. *Flanagan,* 287 Mass. 38, 45; *Downey Co.* v.
*282 Beacon Street Trust,* 292 Mass. 175; *Anglo-American
Direct Tea Trading Co.* v. *Seward,* 294 Mass. 349, 351), the
plaintiff did not succeed to that lien in advance of judicial
action attaching or reaching it, such as was taken in *Snyder
v. Smith,* 185 Mass. 58, and *McCarthy* v. *Rogers,* 295 Mass.
245. The plaintiff's position prior to the bringing of his
bill, never rose higher than that of an ordinary unsecured
creditor.

Our statute of limitations originated long before bills in
equity were known in this Commonwealth. Its terms are
those of actions at law. But those terms are construed
broadly enough to include suits in equity. Although G. L.
(Ter. Ed.) c. 260, § 2, speaks of "actions of contract"
founded upon "contracts or liabilities, express or implied"
as among the "actions" which, except as otherwise pro-
vided, must be commenced within six years, equitable
remedies as well as legal ones to enforce such "contracts or
liabilities" are within the statute. It has been said that
the "statute . . . operates with us *ex vigore suo,* in equity
as well as at law." *Farnam* v. *Brooks,* 9 Pick. 212, 242, 243.
*Baker* v. *Atlas Bank,* 9 Met. 182, 195. *Ela* v. *Ela,* 158
Mass. 54, 59. *Bremer* v. *Williams,* 210 Mass. 256, 257.
*Young* v. *Walker,* 224 Mass. 491, 493. *Geldert* v. *Usher,*
248 Mass. 323, 325, 326. *State National Bank of Lynn* v.
*Beacon Trust Co.* 267 Mass. 355, 359, 360. *Stoneham Five
Cents Savings Bank* v. *Johnson,* 295 Mass. 390, 395.

*Decree affirmed with costs.*