NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-780

CAROLYN A. VERDURA, trustee,[1] & another[2]

vs.

NANCY DELGROSSO & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this action, the plaintiffs sought to establish a one-half ownership interest in certain Revere property or, alternatively, to recover one-half of the value of the property. A Superior Court judge determined that the applicable statute of limitations barred their claims and entered a judgment dismissing their complaint.  We affirm.

Background.  In February, 1997, siblings Clorinda Ferruzzi and Benedict J. Coviello, Jr., the sole beneficiaries and trustees of a trust created by their deceased father, executed a written agreement (the 1997 agreement) regarding a two-family home in Revere (Revere property) owned by the trust.  The 1997

---

[1] Of the Benedict J. Coviello, Jr. Family Irrevocable Trust under a declaration of trust dated December 5, 2014.
[2] Carmela Coviello.
[3] Daniel DelGrosso.

agreement provided that the Revere property would be transferred from the trust to the siblings as tenants in common. The 1997 agreement further outlined how the parties would use and maintain the Revere property.[4]

On June 24, 1997, Benedict Jr. and Clorinda, as trustees of the 1994 trust, granted to themselves by deed the Revere property as joint tenants, rather than as tenants in common. The legal implications of creating a joint tenancy instead of a tenancy in common do not appear to be disputed. "A joint tenancy is . . . characterized by the right of survivorship" such that "[u]pon the death of one joint tenant, sole ownership of the property automatically vests in the surviving tenant." Battle v. Howard, 489 Mass. 480, 483-484 (2022). Tenants in common, however, have no right of survivorship and the property would pass to a tenant in common's heirs at law and not to the other tenant in common. Aquino v. United Prop. & Cas. Co., 483 Mass. 820, 834 (2020). Benedict Jr. died in 1999. Thus, according to the deed, title to the Revere property vested in

_____

[4] Pursuant to the 1997 agreement, Benedict, Jr. would continue to occupy the second floor and garage and Clorinda would occupy or rent out the apartment on the first floor as she saw fit. Additionally, the agreement provided that (i) any rent derived from renting the first floor would be taxable income to Clorinda only; (ii) the parties would share equally in the taxes, heating oil, water, insurance, and all other expenses to maintain the property; (iii) each party would put $150 per month aside to pay expenses; and (iv) each sibling would be responsible for the interior maintenance of the portion each occupied or rented.

his sister, Clorinda, upon Benedict Jr.'s death.  However, Benedict Jr.'s wife, Carmela, continued to reside in the second floor unit, and Clorinda and Carmela maintained the property in a manner consistent with the 1997 agreement.

By a deed recorded on September 11, 2013 (the 2013 deed), Clorinda transferred the Revere property to her daughter, Nancy. Thereafter, Nancy and Carmela shared expenses of the property and continued to act consistently with the 1997 agreement.  On December 19, 2013, Attorney Steven Epstein, the attorney for Benedict Jr.'s estate, sent a letter to Clorinda's attorney, Christopher McNamara, indicating that although Carmela stood in the place of her husband, there was no deed transferring an interest in the Revere property to her.  Epstein asked McNamara to contact him to discuss the matter and correct the record. The record on appeal does not reflect that further discussion between the attorneys took place.  However, in their brief, the plaintiffs state that "[e]veryone knew of the [1997 Agreement] before September 10, 2013, and on and sometime after September 10, 2013 they knew of the 1997 [d]eed's grant as [j]oint [t]enants."

On December 5, 2014, Carmela established the Benedict J. Coviello, Jr. Family Irrevocable Trust and deeded her interest in the Revere property to the trust (Carmela's trust). Carmela's daughter, Carolyn, is trustee of Carmela's trust.

3

Thereafter, Nancy and Carolyn continued to share the expenses of maintaining the property. Clorinda died on November 15, 2017; Carmela moved out of the second floor apartment on March 1, 2020.

On April 2, 2020, the trustee of Carmela's trust and Carmela, individually, commenced this action seeking (1) reformation of the June 1997 deed from "joint tenants" to "tenants in common," consistent with the siblings' written 1997 agreement, and (2) alleging fraudulent concealment by Nancy and her husband, Daniel.[5]

The defendants filed a motion for summary judgment arguing that the statute of limitations barred the plaintiffs' claims. At the summary judgment hearing, the plaintiffs conceded that count one (reformation) was untimely. However, the plaintiffs argued that the parties were "partners or co-venturers" and that the partnership held the equitable title of the property. The plaintiffs further argued that the partnership's interest, supported by the 1997 agreement and the parties' conduct in conformation with it, supersedes the deed's formal grant of a joint tenancy. The judge determined that the statute of

---

[5] The plaintiffs claimed, in essence, that Nancy and Daniel fraudulently concealed the September 2013 deed when it was recorded and sought recovery of the value of one-half of the property.

4

limitations had passed, and thus allowed the defendants' motion for summary judgment on June 1, 2022.[6]

Discussion. We review a decision to grant summary judgment de novo. See Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 149 (2023). "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law. . . . We review the evidence in the light most favorable to the party against whom summary judgment entered." Id. at 148-149, quoting HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 326-327 (2022).

This case centers on the plaintiffs' contention that due to a scrivener's error or other mutual or unilateral mistake, the June 1997 deed erroneously reflected Benedict Jr.'s and Clorinda's respective interests as joint tenants instead of tenants in common. The plaintiffs, however, conceded at the

---

[6] On June 27, 2022, the plaintiffs filed a motion to amend their complaint, through which they sought a declaratory judgment that the 1997 agreement created a partnership; the partnership holds equitable title to the property; and Clorinda's deed to Nancy passed legal, but not equitable title. They also alleged that Nancy and Daniel fraudulently concealed "the 1997 Agreement and the course of conduct of sharing expenses thereto" and conspired to financially exploit a person over the age of sixty. They sought dissolution of the partnership and an award of the value of one-half of the property. The docket reflects that no action was taken on the motion to amend, noting that the court had granted the motion for summary judgment before receiving the motion to amend. We treat this as an implicit denial of the motion. See Pehoviak v. Deutsche Bank Nat'l Trust Co., 85 Mass. App. Ct. 56, 65 n.13 (2014).

5

summary judgment hearing that their claim for reformation was untimely and we, therefore, need not consider it here.

On appeal, the plaintiffs claim that the 1997 agreement created a partnership, that the siblings agreed to retain the Revere property as a business, and that they contributed as capital their share of the equity in the mortgage. Although their original complaint accused the defendants of fraudulent concealment without claiming the existence of a partnership, where the plaintiffs made this argument at summary judgment, in our discretion we address it.

The plaintiffs' argument is unavailing because, even assuming that a partnership existed, the plaintiffs failed to comply with the applicable statute of limitations. The breach of the partnership agreement occurred in 1997 when the property was transferred to the siblings as joint tenants, predating the commencement of this action by twenty-three years. Moreover, even assuming that there was an additional breach of fiduciary duty or breach of the partnership agreement arising from the 2013 deed from Clorinda to Nancy, the plaintiffs still would not prevail. By all accounts, Carmela was aware, first, that the deed in 1997 had conveyed title to the property to Benedict Jr. and Clorinda as joint tenants, and second, that Clorinda had transferred the Revere property to Nancy, at least by December 2013 as evidenced by Attorney Epstein's December 19, 2013

6

letter.[7]  Indeed, that letter also reflects that Carmela was aware of the transfer to Nancy by that date as well.  See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 520 (1997) (breach of fiduciary duty and fraudulent concealment cause of action accrues for purposes of the statute of limitations on the "happening of an event likely to put the plaintiff on notice of facts giving rise to the cause of action").  Yet, plaintiffs did not commence this action until 2020, more than six years after they admittedly had notice of their harm.

The plaintiffs seek to toll the clock by contending that the defendants repeatedly "ratified" the partnership agreement where, following Benedict Jr.'s death, first Clorinda and Carmela, and then their daughters, treated the property as if the 1997 agreement were in place.  See generally Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-206 (1990).  Thus, they claim the statute of limitations should not have commenced running until the defendants breached by refusing to negotiate

---

[7] Massachusetts courts have recognized that it would be unfair to conclude that the statute of limitations has run before a plaintiff is put on notice that she has a claim.  See Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990).  Consequently, in certain circumstances, our courts have applied a "discovery rule" that tolls commencement of the statute of limitations to a date when "a plaintiff discovers, or . . . should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct."  Id. at 205-206.

dissolution of the partnership in January 2020.  Even accepting the assertion that a partnership existed, this claim fails in view of the plaintiffs' concession that "[e]veryone knew of the Agreement before September 10, 2013, and on and sometime after September 10, 2013 they knew of the 1997 [d]eed's grant as [j]oint [t]enants," circumstances that amount to a clear breach of the purported partnership.  See id. (cause of action accrues and statute of limitations starts to run "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct").

We disagree that adherence to the 1997 agreement in other respects means that Benedict Jr.'s heirs could safely ignore the major breach of the agreement that occurred when the siblings took title as joint tenants -- which they were aware of by 2013.  Given Carmela's knowledge of the transaction by December 2013, as demonstrated through Attorney Epstein's December 19, 2013 letter, the plaintiffs' assertion that Nancy and her husband fraudulently concealed the transaction is unavailing.  Furthermore, there is no evidence that Clorinda or her daughter, Nancy, either made fraudulent representations or offered any assurances as to the title of the Revere property to support the existence of a genuine issue of material fact necessary to survive the defendants' motion for summary judgment.  See

Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696-697 (1993).

Thus, the plaintiffs' complaint, filed some seven years later, is untimely -- whether it is grounded in a partnership theory or not. Under any view of the evidence and giving the plaintiffs the benefit of the discovery rule to set the accrual date as December 2013, whether the plaintiffs' claim is considered a tort, a breach of contract, or a breach of partnership or fiduciary duty created by the 1997 agreement, the statute of limitations lapsed before this action was commenced.[8] See G. L. c. 260, § 2A (three-year statute of limitations applicable to tort actions); Barber v. Fox, 36 Mass. App. Ct. 525, 527, 529 (1994) (contract statute of limitations six years and applies to breach of fiduciary duty claim arising from failed promises).[9]

---

[8] At oral argument, the plaintiffs stressed that they are seeking equitable relief and they intimated that the statute of limitations therefore should not apply. To the contrary, "the statute of limitations in general applies equally in equity and at law." State Nat'l Bank of Lynn v. Beacon Trust Co., 267 Mass. 355, 359 (1929). See Ballentine v. Eaton, 297 Mass. 389, 394 (1937).

[9] There was no error in denying the plaintiffs' 2022 motion to amend the complaint. What we have said demonstrates the futility of the motion and, leaving aside the timing of the motion, a judge does not abuse his or her broad discretion to deny a motion to amend where the claims would be futile. Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 572 (2004).

The judge did not err in granting summary judgment to the defendants.

Judgment affirmed.

By the Court (Neyman, Desmond & Smyth, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered: August 23, 2023.

---

[10] The panelists are listed in order of seniority.