FRANCIS C. WELCH & another, trustees, *vs.* CITY OF BOSTON.

Suffolk. March 5, 1915. — May 20, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Tax,* On intangible property held by trustees. *Trust,* Taxation.

Under St. 1909, c. 490, Part I, § 23, cl. 5, bonds and shares of corporate stock, the
legal title to which is in trustees residing in this Commonwealth, where all the
beneficiaries of the trust reside out of the Commonwealth, must be assessed for
taxation to such trustees, although the bonds and the certificates of stock are
deposited and kept in another State and the trustees were appointed by a pro-
bate court of such other State.

In the present case it was unnecessary to consider what would have been the
effect of a statute of the State where the evidences of the intangible property
were deposited and kept undertaking to establish by law a *situs* in that State
for all intangible property held by trustees appointed by its courts.

It also was unnecessary to consider what the decision of this court would have been
· if the property assessed here for taxation had been part of an estate in process
of settlement and distribution in the courts of another State.

CONTRACT by the trustees under the will of Marianne H.
Dwight, who died on August 31, 1912, at York in the State of
Maine, being a resident of that State, against the city of Boston,
for $210, the amount of a tax paid by the plaintiffs under protest
on January 18, 1915, with interest thereon from that date. Writ
dated January 18, 1915.

In the Superior Court the case was submitted to *King,* J.,

upon an agreed statement of facts, the essential part of which is stated in the opinion. The judge found the facts to be as stated, and at the request of both parties reported the case for determination by this court. If the plaintiffs were entitled to recover, judgment was to be entered for them in the sum of $210 and interest from January 18, 1915; otherwise, judgment was to be entered for the defendant.

The material part of St. 1909, c. 490, Part I, § 23, is as follows:

"All personal estate, within or without the Commonwealth, shall be assessed to the owner in the city or town in which he is an inhabitant on the first day of May. . . . Fifth, Personal property held in trust by an executor, administrator or trustee, the income of which is payable to another person, shall be assessed to the executor, administrator or trustee in the city or town in which such other person resides, if within the Commonwealth; and if he resides out of the Commonwealth it shall be assessed in the place where the executor, administrator or trustee resides; and if there are two or more executors, administrators or trustees residing in different places, the property shall be assessed to them in equal portions in such places, and the tax thereon shall be paid out of said income. If the executor, administrator or trustee is not an inhabitant of the Commonwealth, it shall be assessed to the person to whom the income is payable, in the place where he resides, if it is not legally taxed to an executor, administrator or trustee under a testamentary trust in any other State."

*B. Corneau,* for the plaintiffs.

*J. P. Lyons,* for the defendant.

RUGG, C. J. This is an action to recover a tax paid under protest. The plaintiffs are trustees appointed by the Probate Court of York County in the State of Maine, under the will of a testatrix who at the time of her decease was and for a long time previous thereto had been domiciled in that county and State. All the beneficiaries under the trust are domiciled in the State of California. The *corpus* of the trust fund, so far as concerns the tax here in question, consists entirely of stocks and bonds of corporations foreign to this Commonwealth. These bonds and certificates of stock always have been deposited and kept in the State of Maine. The question is whether such property is legally assessable to the plaintiffs who are domiciled in this Commonwealth.

It is to be noted that the personal property here sought to be taxed does not belong to the estate of a decedent in process of settlement. The plaintiffs do not hold as executors or administrators, but as trustees. It must be presumed that, at least so far as relates to the personal property held by the plaintiffs, the estate of the testatrix has been distributed and a legacy has been paid to them as trustees. It does not appear that the property has been taxed either at the domicil of the beneficiary or in Maine, nor does it appear that there is any law permitting or requiring the taxation of the property in either of those jurisdictions. We are not concerned, therefore, with any questions touching double taxation, except so far as that may be involved in the interpretation of our own statute.

Manifestly the legal title to the stocks and bonds in question is in the plaintiffs. It is one of the fundamental characteristics of trusts that the full and exclusive legal title is vested in the trustee. *Gray* v. *Lenox*, 215 Mass. 598. The rights of the beneficiary are purely equitable and cannot be enforced ordinarily at law, but are cognizable only in equity. Our tax law proceeds upon the basis that in all instances where the trustee is a resident of this Commonwealth he is the person to whom the assessment must be made. That is on the ground that he is the owner in the legal sense. The opening words of the controlling section of the statute render liable to taxation all personal property owned by inhabitants of the Commonwealth whether within or without the Commonwealth, unless by reason of some special exemption. *Putnam* v. *Middleborough*, 209 Mass. 456. That it was the legislative intention to tax property of this character is manifest from St. 1909, c. 516, section one of which exempts from taxation "merchandise machinery and animals owned by inhabitants of this Commonwealth but situated in another State," and § 2 of which subjects to taxation in the city or town where they are situated like personal estate owned by non-residents. The property in question is owned by inhabitants of this Commonwealth, although physically it is not kept within the State. But it is intangible in its character. It is quite different in nature from coal or cars or other corporeal property which, for purposes of taxation, by reason of its substantial body may acquire a *situs* of its own apart from the domicil of its owner. *Union Refrigerator Transit Co.* v. *Kentucky*,

199 U. S. 194. While for some purposes bonds, being specialties, have a *situs* where they are found, *Callahan* v. *Woodbridge,* 171 Mass. 595, *Wheeler* v. *New York,* 233 U. S. 434, yet commonly they are held to be located at the domicil of their owner. *Frothingham* v. *Shaw,* 175 Mass. 59. Bonds are but a species of indebtedness and wherever actually held or deposited "may for purposes of taxation, if not for all others, be regarded as situated at the domicil of the creditor" or owner. *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 498. Certificates of stock, apart from express statute, have never been regarded as capable of acquiring a *situs* independent of the domicil of the owner and of the corporation whose fractional ownership they represent. *Kennedy* v. *Hodges,* 215 Mass. 112. Both bonds and stocks are in their nature difficult of discovery. They can be kept in small compass and are not likely to be observed. They are called intangible property. The maxim that they follow the person of their owner as to *situs* has its foundation not only in convenience but in the practical necessities of business. That maxim is recognized generally as applicable to such securities as here are in question, in the absence of some special provision. *Covington* v. *First National Bank of Covington,* 198 U. S. 100, 111. *Hawley* v. *Malden,* 232 U. S. 1, 12.

The *situs* of such intangible securities for purposes of taxation commonly is treated as at the domicil of the owner. "Generally speaking, intangible property . . . may be regarded, for the purposes of taxation, as situated at the domicil of the creditor [owner] and within the jurisdiction of the State where he has such domicil." A tax upon such property to the owner at his domicil, in accordance with the State statute, "violates no provision of the Federal Constitution." *Buck* v. *Beach,* 206 U. S. 392, 401. Even in the light of the most recent decisions domicil of the owner usually fixes the *situs* of personal property, for purposes of taxation, even as to classes described as tangible, unless it has become permanently located in some other jurisdiction and, so far as adjudications go, is also employed in the prosecution of business there. *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, 74. See 15 Columbia Law Review, 377.

Upon this aspect of the case the contention of the plaintiffs is that the owners of stocks and bonds may establish an independent *situs* for the purpose of their taxation, different from the

domicil of the owner, the debtor or the corporation issuing the stock, by a simple deposit of them in a foreign State, and thereby divest the jurisdiction of their domicil of the right to tax. Without undertaking to say what effect such deposit may have on the taxing power of the State of deposit, see *Wheeler* v. *New York,* 233 U. S. 434, 439, 446, it seems to us that the power of the State of their domicil to tax such property is not affected.

If it be said that governmental protection is the consideration for taxation, *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82, 90, *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 202, there is still support for the tax. The plaintiffs would be given whatever protection they as owners might require from our government, and they doubtless could be held by our courts to the performance of their trusts at the suit of their *cestui qui trustent* or other interested parties.

The terms of cl. 5 of § 23 of our tax law are explicit to the effect that a resident trustee shall be assessed in the place where he resides when the income of the trust is payable to a non-resident. These words include a case like the present. There is no indication of a legislative purpose to restrict the operation of the tax law to instances where the trust had its origin within the State. It is the title to property alone which is made the test of liability to the tax. There is no manifestation of a design to exclude from taxation intangible personal estate received by trustees under the terms of a foreign will or other foreign instrument. The final sentence of the section exempting from taxation to domestic beneficiaries property on which a tax has been paid in another jurisdiction by foreign trustees, discloses a purpose not to impose in that instance double taxation.

It is urged that, because the plaintiffs owe their appointment to a foreign court, they cannot be taxed here. But there is nothing to indicate that the trust fund held by the trustees is regarded as in the custody of that foreign court, or to show that the usual incidents of complete legal title did not follow the transfer of this intangible personal property to the trustees.

It does not appear on this record and it cannot be presumed in the absence of evidence that there is any provision in the law of Maine which undertakes to establish for shares of stock and bonds passing under the will of a deceased resident to non-resident trus-

tees a *situs* in that State for purposes of taxation. See *Augusta* v. *Kimball*, 91 Maine, 605. Nor is it necessary to consider what extraterritorial effect such law, if it existed, would have.

Strong practical considerations lead to the same result. We know of no general principle of jurisprudence which apart from statute fixes the *situs* of a trust fund in the jurisdiction of the court which appoints a non-resident trustee to execute the terms of the trust. There is no way, so far as this record shows, in which the taxing power of Maine in this case can ascertain the items of the trust investment, in order to determine the amount there subject to taxation. There is or may be no method of making service upon a non-resident trustee or exercising any compulsion to make the *corpus* of the fund contribute to the support of government. Without undertaking to say what the law of this Commonwealth now is, it seems plain that before the enactment of St. 1889, c. 462, requiring the appointment of a resident agent, there were no direct means of reaching such non-resident trustee appointed by our courts. The natural method of dealing with the taxation of invisible and intangible property is to treat with the owner where he lives, where he can be reached and where it is comparatively easy to administer the law with justice. Any other course seems to open wide the door to evasion of all taxation.

Different questions would be presented if it appeared that the State of Maine had established by law a *situs* in that State for all intangible personal property held by trustees appointed by its courts, or that the property was part of an estate in process of settlement and distribution by the courts of a foreign State, upon which no opinion is expressed. In the case at bar the owners of the legal title to intangible personal property are residents of this Commonwealth and are made subject to taxation by the clear terms of our tax law. They have chosen, for reasons of their own, to cause the evidences of title to such intangible property to be deposited in a foreign jurisdiction. But that circumstance is not enough to divest this State of the power to tax. No reason appears why, on legal grounds or even on equitable considerations, they are entitled to a relaxation of a settled rule of law as to the *situs* of intangible personal property.

For these reasons no right secured to the plaintiffs by the Fourteenth Amendment to the Constitution of the United States or by

our own Constitution is violated by the statute as thus interpreted. This conclusion is supported in principle by *Kirtland* v. *Hotchkiss,* 100 U. S. 491, *State Tax on Foreign-held Bonds,* 15 Wall. 300, *Buck* v. *Beach,* 206 U. S. 392, 401, *Augusta* v. *Kimball,* 91 Maine, 605, *Ailman* v. *Honey,* 17 R. I. 362, *People* v. *Feitner,* 168 N. Y. 441, *Mackay* v. *San Francisco,* 128 Cal. 678. See *Hemenway* v. *Milton,* 217 Mass. 230. It is contrary to *Goodsite* v. *Lane,* 72 C. C. A. 281, which, for the reasons stated, we are constrained not to follow.

*Judgment for the defendant.*