WILLIAM GREENOUGH *et al., Tr. vs.* TAX ASSESSORS OF THE CITY OF NEWPORT.

MAY 31, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

478

BAKER, J. This is a petition for relief from the assessment of a tax and is brought under general laws 1938, chapter 31, §14. The petitioners are seeking to recover the tax heretofore paid by them under protest, the basis of their petition being that the tax in question was illegally and unconstitutionally assessed against one of them. The matter was heard in the superior court by a justice thereof sitting without a jury. He rendered a decision denying and dismissing the petition. A bill of exceptions containing two exceptions, one to the decision and another which is not now pressed, was thereafter prosecuted to this court by the petitioners and is now before us for consideration.

The evidence shows the following pertinent facts, among others: The petitioners, William Greenough and George Henry Warren, Jr., are the duly qualified executors and co-trustees under the will of George Henry Warren, who died June 3, 1943 and who was a resident of the city of New York. That will was duly admitted to probate by a decree of the surrogate's court of the county of New York entered June 30, 1943, and letters testamentary were issued to the petitioners. A copy of the will, authenticated under the act of Congress, was also ordered filed and recorded, and letters testamentary in Rhode Island were issued to the petitioners by a decree of the probate court of the city of Newport in this state entered November 15, 1943.

Under the fifth clause of the will the petitioners were bequeathed the sum of $400,000 to be held by them in trust to pay the net income therefrom, in the first instance, to the testator's daughter Constance Whitney Warren for and during her natural life. The clause then contained other and further provisions respecting said sum and the income therefrom in the event of the taking place of certain contingencies not now material to the issues before us. By the sixth clause of the will the testator also bequeathed to the petitioners the further sum of $200,000 "in augmentation of and to be added to the principal of the trust created by the fifth clause of this my will for the benefit of my daughter Constance Whitney Warren to be held and disposed of by them upon the same terms and conditions as set forth in said fifth clause".

Further, it appears from the evidence that the testator's daughter Constance Whitney Warren is a resident of the state of New York; that the petitioner and trustee William Greenough is likewise a resident of that state; but that the petitioner and trustee George Henry Warren, Jr. is a domiciled resident of the city of Newport in this state. It is not disputed that at the time of the death of the testator and on June 15, 1944 at 12 o'clock noon, which was the time of the assessment of the tax involved in this proceeding, and at all

times up to the hearing in the superior court, all of the intangible personal property constituting the principal of the above-mentioned trust fund was located in the city of New York and never has been located in this state.

It is admitted that the tax in question was assessed by the respondents under the provisions of G. L. 1938, chap. 30, §9, subsec. fifth, which is as follows: "Intangible personal property held in trust by any executor, administrator, or trustee, whether under an express or implied trust, the income of which is to be paid to any other person, shall be taxed to such executor, administrator, or trustee in the town where such other person resides; but if such other person resides out of the state, then in the town where the executor, administrator, or trustee resides; and if there be more than one such executor, administrator, or trustee, then in equal proportions to each of such executors, administrators, and trustees in the towns where they respectively reside."

According to the evidence a tax of $50 for the fiscal year 1944 to 1945 appears on the assessment roll of the city of Newport as follows: "George H. Warren junior, trustee under will of George H. Warren for Constance W. Warren, assessment of $12,500, intangible personal property". The uncontradicted evidence shows that, according to information given the tax assessors of Newport, prior to the above assessment, by an attorney at law representing the trustee George Henry Warren, Jr., $12,500 was one half of the sum held by the trustees on the date of the assessment as the then *corpus* of the aforesaid trust created under the fifth and sixth clauses of the testator's will.

The respondents argue that the petition was correctly denied and dismissed by the superior court because it could not properly be brought in its present form under §14, and also because the petitioners were not entitled to recover the tax which they had paid, in view of the facts appearing in evidence respecting the nature of such payment. These defenses were not set out by the respondents in any of their pleadings, were not brought to the attention of that court

and apparently are raised for the first time in argument before us. Because of our ultimate disposition of the present petition, it is not necessary for us to pass upon the above questions and we shall, for the purposes of this case only, assume that the petition is properly brought and that the petitioners are not prevented from recovering the tax in question merely by reason of the evidence relating to the manner of its payment.

In support of their position, the petitioners contend that, properly construed, subsec. fifth of §9 has no application to the facts and circumstances disclosed by the evidence, and therefore that the tax appearing on the assessment roll of the city of Newport, as hereinbefore set out, is illegally assessed and is void. The petitioners also make the further argument that if the above statute is held to be applicable, then it is unconstitutional under section 1 of article XIV of the amendments to the constitution of the United States and under sec. 16 of art. I of the constitution of this state.

On the other hand, the respondents maintain that the only question for this court on the present record is the constitutionlity of subsec. fifth of §9 under the above-mentioned provisions of the constitution of the United States and the constitution of this state. They urge that the question of the applicability of the state statute was not before, and was not decided by, the superior court and is not properly before us.

While the record of the hearing before the superior court is not as clear and definite on that issue as is desirable, nevertheless we have come to the conclusion that such question was before that court and was decided by it adversely to the petitioners. After testimony had been taken setting out the material facts, the trial justice filed a rescript which ended in the following language: "The assessment in question was made in strict compliance with Sub-section Fifth, Section 9, of Chapter 30, of the General Laws, 1938, and there is nothing in the proof offered to justify the Court in saying that the tax assessors deviated in one iota in this

assessment from the law as laid down in the above-mentioned statute."

If this language cannot properly be construed as a finding that the statute was applicable, then in our opinion the trial justice was making no finding whatever since he showed in his rescript that he was aware that he had no authority to pass on the constitutionality of such statute, and no facts were in dispute. In our judgment we should not assume that he was filing a meaningless rescript. The only issue therefore on the present record which the superior court had jurisdiction to decide involved the applicability of the statute in question.

Whether or not subsec. fifth of §9 is applicable to the facts of the instant case merits careful consideration. We find nothing in the express provisions of the subsection which in our opinion prevents its applicability. There is, at least, a direct authorization to the taxing body to impose a tax on the intangible personal property held by any resident trustee, and a direction as to the place and manner of levying such a tax. The language used is simple and without ambiguity. The subsection is broad in its scope and there are no express exceptions or words of militation employed. Resident trustees of trusts originating in another jurisdiction are not specifically or by implication excluded from the operation of the subsection. In fact, the general assembly, in our opinion, has in the statute shown its intent that intangible personal property, wherever located, when in the possession of such resident trustees, is taxable in this state according to the terms thereof. Unquestionably in such matters the policy of the law is controlled and fixed by the legislative not the judicial branch of the state government.

The petitioners do not question the fact that the letter of the statute was followed by the respondents in assessing the tax involved here. The statute in substantially its present form has been construed by this court in several cases. See *Anthony* v. *Caswell*, 15 R. I. 159; *Ailman & Honey, Petitioners*, 17 R. I. 362. In the first of these the court held that

the provisions of a statute in the language of the statute now before us did not permit a *nonresident* trustee, who had no property in this state, to be taxed in the town of this state where his *cestui que* trust resided.

In the second of the cases, however, the court upheld the tax assessed in Newport against the trustee there resident, who held in trust mortgages on real estate in Newport, but who was appointed by a South Carolina court under the will of a deceased resident of that state. The *cestui que* trust who was entitled to the income of the trust estate resided in New York. Perhaps the tax in that case and the applicability of the statute to those facts can be more readily supported than can the tax in the instant case because the trustee in that case had invested part of the trust estate in mortgages in Newport property, to which fact the court specifically referred in its opinion, whereas all the trust estate in the present case is located in New York. However, a careful consideration of the opinion leads us to the belief that in principle it fully supports the position that the taxing statute is applicable to the facts of the case now before us.

For example, in the *Ailman & Honey* case the court used the following language at pages 364, 365: "There is no question of the right of the State to put all property within its jurisdiction under contribution for necessary revenue. . . . In the case before us, the legal owner resides here, and he has invested a part of his trust estate here; so that the *situs* of the property is *doubly* fixed. The fact that the authority of the trustee comes from another State does not change the fact of his residence and legal title within this State; nor the fact that the property taxed is here, by reason of its investment in loans secured by mortgages within this State, which run to the trustee." (italics ours)

The court thus clearly holds that the fact that the trustee, the legal owner of the trust property, resides in this state fixed here for our tax purpose the *situs* of the trust property held by him in so far as intangible personal property is concerned. It is well settled that ordinarily a trustee is consid-

484

ered for taxation purposes to be the owner of the property which he holds in trust. The court so held in *Anthony* v. *Caswell, supra,* saying, at page 161: "The statute, following the common rule, clearly recognizes executors, administrators, and trustees as the owners, for the purposes of taxation, of the property held in trust by them." The *situs* of intangible personal property for the imposition of a tax is at the domicile of such owner. *Edwards* v. *Cardarelli,* 65 R. I. 236.

We find, therefore, that, aside from any question of constitutionality, the provisions of subsec. fifth of §9 are applicable to the facts of the instant case, and that the tax assessed against George Henry Warren, Jr. as trustee is to that extent valid and is not beyond the scope and authority of the statute.

Since this issue of applicability is largely governed, at least as far as we are concerned, by the principles laid down in our own cases as above indicated, it ordinarily would not be necessary to discuss authorities from other jurisdictions. The petitioners, however, have cited several cases upon which they strongly rely and we will refer to certain of them briefly. In these cases, on facts somewhat similar to those in the present case, it was held that the tax under consideration was improperly assessed. In our opinion they are distinguishable from the case now before us.

In *Newcomb* v. *Paige,* 224 Mass. 516, the court applied the principle of interstate comity and also found, at page 519, that a particular sentence in the Massachusetts taxing act "is some indication of a legislative purpose that a trust fund lawfully within the taxing jurisdiction of another State and there making a just contribution to the support of government, should not be made liable to another tax here." In the present case we perceive no indication of any such legislative purpose in our own act but, as we have stated, find from its language a directly contrary intent. In the *Ailman & Honey* case this court said, at page 364, referring to the trust fund before it: "If it be thus liable to double taxation, here and elsewhere, that has to do with the policy of the law, over which we have no control."

In *Dorrance's Estate,* 333 Pa. 162, the court, in arriving at
its decision, construed the language of the taxing statutes, in
respect to the ownership, holding or possession of trust
property, narrowly and also pointed out that the statute
contained no provision for dividing such trust property
among resident and nonresident trustees for the purpose of
assessing the tax. Our statute, on the other hand, has a
specific provision allowing proportionate taxation as to resi-
dent trustees.

*Harrison* v. *Com'r. of Corps. & Taxation,* 272 Mass. 422,
involved the imposition of the Massachusetts income tax
on trust estates originating and administered outside of that
state, certain of the trustees, however, being residents there-
in. In refusing to allow the tax the court, at page 428, stated:
"The principle, that the situs of intangible property held in
trust, in the absence of other controlling factors follows the
person of the trustee, becomes inapplicable because by a
dominating law its situs is fixed in the place where the testa-
mentary trust was created and established and is being ad-
ministered under direction of its court. For all purposes
incident to the cases at bar, its situs is immovably estab-
lished within the State where the testamentary trust of
which it is a part is being administered." Such a holding in
our opinion appears to be contrary in principle to the views
already expressed by this court and so understood cannot be
followed by us. We find no controlling factor which takes
the instant case out of the general rule respecting the *situs* of
intangible personal property held in trust.

The petitioners also advance the argument that subsec.
fifth, §9, should not be applied to the facts of this case be-
cause under the law of New York trustees have title to the
trust property as joint tenants and must act as a unit in
administering the trust. Although this fact is referred to in
support of the decision in some cases, particularly in Massa-
chusetts, we do not understand why it should, in and of
itself, prevent the imposition by this state of a tax under
subsec. fifth, §9, other requirements of that statute being

complied with. The fact that such is the law in New York, where this trust was created, should not in our opinion be held to alone prevent the imposition of a tax by this state, if assessed on persons or property within its jurisdiction, unless such tax is held to be unconstitutional.

Finally, the petitioners contend that if subsec. fifth, §9, is found to be applicable to the facts herein, such subsection is unconstitutional as being contrary to the "due process" clause of the constitution of the United States and to sec. 16 of art. I of the constitution of this state, which prevents the taking of private property for public uses without just compensation.

Before we deal with this contention it should be determined·whether or not it is properly before us. At the outset it should be noted that in this civil proceeding only the unconstitutionality of an act of the general assembly is brought in question upon the record and that no constitutional question of any other nature or kind is raised. That being so the provisions of G. L. 1938, chap. 545, as amended, apply. Section 1 of that chapter was repealed by P. L. 1940, chap. 941, sec. 1, and §6 of chap. 545 was amended by sec. 2 of chap. 941 to read as follows: "Whenever in any proceedings, civil or criminal, in the superior court or in any district court, prior to the trial thereof on its merits, or upon a motion in arrest of judgment, any question of law shall arise, or the constitutionality of an act of the general assembly shall be brought in question upon the record, which in the opinion of the court, or in the opinion of the attorney-general, if the state be a party to such proceeding, is of such doubt and importance, and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined . . . ."

Under §1 of chap. 545, now repealed, the procedure involving certification of such questions before trial was relatively

simple. Upon consideration we are of the opinion that in repealing §1 of chap. 545 and by amending §6 of that chapter as above set out it was not the intention of the general assembly to prevent entirely, in a civil case, the certification of constitutional questions of the kind now before us in instances where a justice of the superior court has refused to exercise his discretion in favor of immediate certification. In our opinion the object of sec. 2, chap. 941, P. L. 1940, was merely to give a justice of the superior court in the ordinary civil proceeding discretion in the matter of certifying to the supreme court such constitutional questions prior to the trial of the case, where previously such certification was mandatory. As we view it, the issue, on a motion to certify under §6 as amended, is merely the time of certification and the refusal to certify immediately is not a final disposition of the motion. In our judgment such a motion when once made, if denied in the first instance, nevertheless remains alive until after the case is fully heard and determined, when it comes before us automatically and without further action, in the event a bill of exceptions or appeal is prosecuted to this court by either party.

While §6 as amended does not expressly provide for the above procedure, nevertheless in our opinion it may reasonably be implied therein in the interest of uniform practice and in the preservation of the right of certification under the above circumstances. Such a procedure in effect would be substantially analogous to that specifically provided for in §2 of chap. 545 in respect to the certification of this kind of a constitutional question in a criminal case. There it is expressly provided that the decision of such question be reserved, that the trial of the case proceed to a determination as if the statute were constitutional, and that then, if the defendant is found guilty, the constitutional question raised is to be certified forthwith to the supreme court.

In the instant case the record shows that prior to the hearing in the superior court a motion was made to certify the constitutional question raised herein to the supreme

court. Under our interpretation of the statute, as above set forth, the denial of that motion merely delayed the time of certification until the case came here on petitioners' exceptions after final hearing and decision. The certification of the constitutional question therefore is automatically before us for consideration and decision.

The petitioners admittedly do not claim unconstitutionality on the ground of double taxation. It has recently been held that such taxation is permissible. See *Curry* v. *McCanless*, 307 U. S. 357; *State Tax Comm. of Utah* v. *Aldrich*, 316 U. S. 174. The petitioners do urge as a valid ground for their claim that the state renders no equivalent for the tax against George Henry Warren, Jr. as trustee, and renders no protection and extends no benefit to the trust fund. This general test of constitutionality is based by them on the following language used in the majority opinion in *State Tax Comm. of Utah* v. *Aldrich, supra,* at page 181: "In line with our recent decisions . . . we repeat that there is no constitutional rule of immunity from taxation of intangibles by more than one State. In case of shares of stock, 'jurisdiction to tax' is not restricted to the domiciliary State. Another State which has extended benefits or protection, or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares . . . may likewise constitutionally make its exaction."

The petitioners maintain that in the instant case the above requirement is not met. We are of the opinion that it is. While it is true that nothing appears on the record to show that this state has as yet actually extended any specific benefit to or protection over the resident trustee or the trust fund, other than by the decree of the probate court of Newport hereinbefore mentioned, nothing indicates that the state is not ready, willing and capable of doing so if requested. We know of nothing in our statutes or decisions which is of discriminatory nature respecting a resident trustee of a trust originating in another state. Such trustee, in our opinion, would be entitled to the same benefits and protection from

the laws of this state as would any other natural person here resident.

But, however that may be, we are satisfied that the state can demonstrate the practical fact of its power or sovereignty over the resident trustee and through him over the trust fund which he holds. In the *Curry* case, *supra,* at page 366, the court states that rights to intangibles "are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. . . . Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived." And at page 372 the court used the following language: "In effecting her purposes, the testatrix brought some of the legal interests which she created within the control of one state by selecting a trustee there and others within the control of the other state by making her domicile there."

Since a question involving the taxation of trustees and trust funds was raised in the *Curry* case, it is clear that the above general principles respecting intangibles were intended to apply as well to trusts and trustees as to ordinary ownership of that class of property. Further, those principles are stated in such broad and comprehensive terms in the cited cases that in our opinion it was intended that they should apply even though the actual evidences of the intangible property might not be in the taxing state. Thus in the instant case, in our opinion, the residence in this state of the trustee George Henry Warren, Jr. gives it such power and sovereignty over him as trustee that, in proper proceedings, he would become amenable to the laws of this state and to the orders of its courts, and likewise he would be afforded

such benefit and protection, as trustee, as could properly be accorded him. In our judgment the above test, when applied to the constitutionality of our taxing statute, is therefore satisfied by the facts shown.

A rule is enunciated in *Goodsite* v. *Lane,* 139 Fed. 593 (1905), cited by the petitioners, to the effect that for a tax on intangibles assessed against a resident trustee to be valid and constitutional he must be exercising his office of trustee within the state and enjoying as trustee priviliges of value to the estate for which it is just the estate should pay. This rule, in our opinion, would be difficult of application if it appeared that the resident trustee exercised his office within the state only occasionally, or at different periods during a given year, and frequently that he did not so exercise his office at all. In any event, however, such rule, as we see it, is superseded and is no longer operative, because of the views expressed and the general principles set out by the supreme court of the United States regarding the taxation of intangibles in the recent cases of *Curry* v. *McCanless* and *State Tax. Comm. of Utah* v. *Aldrich, supra,* and others.

We therefore find that subsec. fifth, §9, is not contrary to the provisions of section 1 of art. XIV of the amendments to the constitution of the United States or to sec. 16 of art. I of the constitution of this state, but is valid and constitutional, and that the tax involved herein, under all the facts and circumstances, was properly assessed by the respondents against George Henry Warren, Jr. as trustee. The trial justice did not err in denying and dismissing the petition.

The petitioners' exceptions are overruled, and the case is remitted to the superior court.

*Sheffield & Harvey,* Newport, *William R. Harvey,* Newport, *William Greenough,* of New York Bar, for petitioners.

*John C. Burke,* City Solicitor, Newport, for respondents.

*Edward L. Leahy,* Tax Administrator, Providence, *Irving H. Strasmich,* Providence, for State of Rhode Island.