GREENOUGH ET AL., TRUSTEES, *v.* TAX ASSESSORS OF NEWPORT ET AL.

No. 461.   Argued March 7, 1947.—Decided June 9, 1947.

*William Greenough* and *William R. Harvey* argued the cause for appellants. With them on the brief was *J. Russell Haire*.

*John C. Burke* argued the cause for appellees. With him on the brief was *Alexander G. Teitz*.

Mr. Justice Reed delivered the opinion of the Court.

Appellants are testamentary trustees of George H. Warren, who died a resident of New York. His will was duly probated in that state and letters testamentary issued to appellants as executors. A duly authenticated copy of said will was filed and recorded in Rhode Island and there letters testamentary were also issued. Letters of trusteeship were granted to appellants by a surrogate's court in New York. None were needed or asked for or granted by Rhode Island. At all times pertinent to this appeal, appellants, as trustees under the will, held intangible personalty for the benefit of Constance W. Warren for her life and then to certain as yet undetermined future beneficiaries.

The evidences of the intangible property in the estate of George H. Warren and in the trust in question were at all times in New York. The life beneficiary and one of the trustees are residents of New York. The other trustee resides in Rhode Island. During the period in question, he did not, however, exercise his powers, as trustee, in Rhode Island.

A personal property tax of $50 was assessed by the City of Newport, Rhode Island, against the resident trustee upon one-half of the value of the corpus of the trust. The applicable assessment statute for *ad valorem* taxes appears in the margin.[1] At the time of this assessment, the property consisted of 500 shares of the capital stock of Standard Oil Company of New Jersey. The tax was paid by the

[1] General Laws of Rhode Island (1938), c. 30, § 9:

"*Fifth.* Intangible personal property held in trust by any executor, administrator, or trustee, whether under an express or implied trust, the income of which is to be paid to any other person, shall be taxed to such executor, administrator, or trustee in the town where such other person resides; but if such other person resides out of the state, then in the town where the executor, administrator, or trustee resides; and if there be more than one such executor,

trustees and this suit instituted, under appropriate state procedure, in the Superior Court of the County of Newport to recover the tax from the city. The Superior Court by decision denied the petition. A bill of exceptions was prosecuted by these petitioners to the Supreme Court of Rhode Island which overruled the exceptions and remitted the case to the superior court.[2] Thereupon judgment was entered for the appellees and an appeal allowed to this Court. All questions of state procedure and of the applicability of the state statute to the resident trustee in the circumstances of this case were foreclosed for us by the rulings of the Supreme Court of Rhode Island.[3]

The appellants' contention throughout has been that the Rhode Island statute, under which the assessment was made, if applicable to the resident trustee, was unconstitutional under the due process clause of the Fourteenth Amendment to the Constitution of the United States. Their objection in the state courts and here is that Rhode Island cannot tax the resident trustee's proportionate part of these trust intangibles merely because that trustee resides in Rhode Island. Such a tax, they urge, is unconstitutional under the due process clause because it exacts payment measured by the value of property wholly beyond the reach of Rhode Island's power and to which that state does not give protection or benefit. Appellants specifically disclaim reliance upon the argument that the Rhode Island tax exposes them to the danger of other *ad*

---

administrator, or trustee, then in equal proportions to each of such executors, administrators, and trustees in the towns where they respectively reside."

[2] General Laws of Rhode Island (1938), c. 31, § 14; c. 545, § 6, as amended by c. 941, Public Laws of Rhode Island (1939–40); *Greenough* v. *Tax Assessors,* 71 R. I. 477, 47 A. 2d 625.

[3] *Chase Securities Corporation* v. *Donaldson,* 325 U. S. 304, 311; see *Huddleston* v. *Dwyer,* 322 U. S. 232, 237; *American Federation of Labor* v. *Watson,* 327 U. S. 582, 595.

*valorem* taxes in another state.[4]   The same concession was made in the Supreme Court of Rhode Island.[5]   We therefore restrict our discussion and determination to the issue presented by appellants' insistence that Rhode Island cannot constitutionally collect this tax because the state rendered no equivalent for its exaction in protection of or benefit to the trust fund.

For the purpose of the taxation of those resident within her borders, Rhode Island has sovereign power unembarrassed by any restriction except those that emerge from the Constitution.   Whether that power is exercised wisely or unwisely is the problem of each state.   It may well be that sound fiscal policy would be promoted by a tax upon trust intangibles levied only by the state that is the seat of a testamentary trust.[6]   Or, it may be that the actual domicile of the trustee should be preferred for a single tax. Utilization by the states of modern reciprocal statutory tax provisions may more fairly distribute tax benefits and burdens, although the danger of competitive inducements for obtaining a settlor's favor are obvious.[7]   But our question here is whether or not a provision of the Constitution forbids this tax.   Neither the expediency of the levy nor its economic effect on the economy of the taxing state is for our consideration.[8]   We are dealing with the totality

---

[4] See McKinney's Consolidated Laws of New York, Tax Law, §§ 3, 350 (7), 365, 369, 377.  *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54.  Compare *Blackstone* v. *Miller,* 188 U. S. 189; *Curry* v. *McCanless,* 307 U. S. 357, 363; *Graves* v. *Elliott,* 307 U. S. 383; *Graves* v. *Schmidlapp,* 315 U. S. 657; *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 177, with *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *First National Bank* v. *Maine,* 284 U. S. 312.

[5] *Greenough* v. *Tax Assessors,* 71 R. I. 477, 488, 47 A. 2d 625, 631.

[6] Compare *Harrison* v. *Commissioner of Corporations and Taxation,* 272 Mass. 422, 172 N. E. 605.

[7] Compare Mr. Justice Holmes' dissent, *Baldwin* v. *Missouri,* 281 U. S. 586, 595.

[8] *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 181.

of a state's authority in the exercise of its revenue raising powers.

The Fourteenth Amendment has been held to place a limit on a state's power to lay an *ad valorem* tax on its residents.[9] Previous decisions of this Court have held that mere power over a resident does not permit a state to exact from him a property tax on his tangible property permanently located outside the jurisdiction of the taxing state.[10] Such an exaction, the cases teach, would violate the due process clause of the Fourteenth Amendment, because no benefit or protection, adequate to support a tax exaction, is furnished by the state of residence.[11] The domiciliary state of the owner of tangibles permanently located in another state, however, may require its resident to contribute to the government under which he lives by an income tax in which the income from the out-of-state property is an item of the taxpayer's gross income. It is immaterial, in such a case, that the property producing the income is located in another state. *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308. And, where the tangible property of a corporation has no taxable situs outside the domiciliary state, that state may tax the tangibles because the cor-

---

[9] See *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 279. Art. I, § 10, cl. 2 and 3, contain limitations on a state's power to levy import or export or tonnage duties.

[10] *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 202; *Frick* v. *Pennsylvania,* 268 U. S. 473, 488; *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325, 328–29; *Curry* v. *McCanless,* 307 U. S. 357, 363–65, and note 3; see *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444; *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 178.

[11] Even where our cases have spoken of power over the person as though it alone might be a sufficient justification for *ad valorem* taxation of a resident on tangibles outside the taxing jurisdiction, the language was used in instances where there were other bases for the tax. *State Tax on Foreign-held Bonds,* 15 Wall. 300, 319; *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, 76; *Pearson* v. *McGraw,* 308 U. S. 313, 318.

poration exists under the law of its domicile. *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63.[12]

The precedents, holding it unconstitutional for a state to tax tangibles of a resident that are permanently beyond its boundaries, have not been applied to intangibles where the documents of owner interest are beyond the confines of the taxing jurisdiction or where the choses in action are mere promises of a nonresident without documents.[13] One reason that state taxation of a resident on his intangibles is justified is that when the taxpayer's wealth is represented by intangibles, the tax gatherer has difficulty in locating them and there is uncertainty as to which taxing district affords benefits or protection to the actual property that the intangibles represent. There may be no "papers." If the assessment is not made at the residence of the owner, intangibles may be overlooked easily by other assessors of taxes. A state is dependent upon its citizens for revenue. Wealth has long been accepted as a fair measure of a tax assessment. As a practical mode of collecting revenue, the states unrestricted by the federal Constitution have been accustomed to assess property taxes upon intangibles "wherever actually held or deposited," belonging to their citizens and regardless of the location of the debtor.[14] So long as a state chooses to tax the value of intangibles as a part of a taxpayer's wealth, the location of the evidences of ownership is immaterial. If the location of the documents was controlling, their transfer to another jurisdiction would defeat

---

[12] See discussion in *Northwest Airlines* v. *Minnesota,* 322 U. S. 292.

[13] *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54; compare *Blodgett* v. *Silberman,* 277 U. S. 1, 8–12; *Maguire* v. *Trefry,* 253 U. S. 12; *Curry* v. *McCanless,* 307 U. S. 357, 365–68; *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444; *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 180.

[14] *Kirtland* v. *Hotchkiss,* 100 U. S. 491. Compare *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308.

the tax of the domiciliary state. As a matter of fact, there
is more reason for the domiciliary state of the owner of the
intangibles than for any other taxing jurisdiction to col-
lect a property tax on the intangibles. Since the intangi-
bles themselves have no real situs, the domicile of the
owner is the nearest approximation, although other taxing
jurisdictions may also have power to tax the same intangi-
bles.[15] Normally the intangibles are subject to the im-
mediate control of the owner. This close relationship be-
tween the intangibles and the owner furnishes an adequate
basis for the tax on the owner by the state of his residence
as against any attack for violation of the Fourteenth
Amendment. The state of the owner's residence supplies
the owner with the benefits and protection inherent in the
existence of an organized government. He may choose to
expand his activities beyond its borders but the state of
his residence is his base of operations. It is the place
where he exercises certain privileges of citizenship and
enjoys the protection of his domiciliary government.
Does a similar relationship exist between a trustee and
the intangibles of a trust?

The trustee of today moves freely from state to state.
The settlor's residence may be one state, the seat of a trust
another state and the trustee or trustees may live in still
another jurisdiction or may constantly change their resi-
dence.[16] The official life of a trustee is, of course, different
from his personal. A trust, this Court has said, is "an
abstraction." For federal income tax purposes it is some-
times dealt with as though it had a separate existence.
*Anderson* v. *Wilson*, 289 U. S. 20, 27. This is because Con-

---

[15] See *Curry* v. *McCanless*, 307 U. S. 357, 365–68; *Wheeling Steel
Corp.* v. *Fox*, 298 U. S. 193. Certain evidences of indebtedness have
been held sufficient in themselves to justify a state's imposition of a
succession tax upon their nonresident owner. *Wheeler* v. *New York*,
233 U. S. 434.

[16] See *Hutchison* v. *Ross*, 262 N. Y. 381, 393, 187 N. E. 65, 70.

gress has seen fit so to deal with the trust. This entity, the trust, from another point of view consists of separate interests, the equitable interest in the *res* of the beneficiary[17] and the legal interest of the trustee. The legal interest of the trustee in the *res* is a distinct right. It enables a settlor to protect his beneficiaries from the burdens of ownership, while the beneficiary retains the right, through equity, to compel the legal owner to act in accordance with his trust obligations. The trustee as the owner of this legal interest in the *res* may incur obligations in the administration of the trust enforceable against him, personally.[18] Nothing else appearing, the trustee is personally liable at law for contracts for the trust.[19] This is the rule in Rhode Island.[20] Specific performance may be decreed against him.[21] Of course, the trustee when acting within his powers for the trust is entitled to exoneration

[17] *Brown* v. *Fletcher*, 235 U. S. 589, 598–600; *Blair* v. *Commissioner*, 300 U. S. 5, 13.

[18] Scott, Trusts (1939), pp. 487, 1469 *et seq.;* Williston, Contracts (1936) § 312; Bogert, Trusts and Trustees (1935) § 146.

[19] *Duvall* v. *Craig,* 2 Wheat. 45, 56; *Taylor* v. *Davis,* 110 U. S. 330, 335: "A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such."

*Lazenby* v. *Codman,* 28 F. Supp. 949; *Prudential Ins. Co.* v. *Land Estates,* 31 F. Supp. 845; *Peyser* v. *American Security & Trust Co.,* 107 F. 2d 625.

[20] *Roger Williams N. Bk.* v. *Groton Manufacturing Co.,* 16 R. I. 504, 17 A. 170.

[21] *Warren* v. *Goodloe's Executor,* 230 Ky. 514, 520, 20 S. W. 2d 278, 281.

or reimbursement[22] and the trust *res* may be pursued in equity by the creditor for payment.[23]

The Supreme Court of Rhode Island considered the argument that the laws of the state afforded no benefit or protection to the resident trustee. Although nothing appeared as to any specific benefit or protection which the trustee had actually received, it concluded that the state was "ready, willing and capable" of furnishing either "if requested." A resident trustee of a foreign trust would be entitled to the same advantages from Rhode Island laws as would any natural person there resident. *Greenough* v. *Tax Assessors, supra,* 488, 47 A. 2d at 631. There may be matters of trust administration which can be litigated only in the courts of the state that is the seat of the trust. For example, in the case of a testamentary trust, the appointment of trustees, settlement, termination and distribution under the provisions of the trust are to be carried out, normally, in the courts of decedent's domicile. See *Harrison* v. *Commissioner of Corporations,* 272 Mass. 422, 427, 172 N. E. 605, 608. But when testamentary trustees reside outside of the jurisdiction of the courts of the state of the seat of the trust, third parties dealing with the trustee on trust matters or beneficiaries may need to proceed directly against the trustee as an individual for matters arising out of his relation to the trust. Or the resident trustee may need the benefit of the Rhode Island law to enforce trust claims against a Rhode Island resident. As the trustee is a citizen of Rhode Island, the federal courts would not be open to the trustee for such causes of action where the federal jurisdiction depended upon diversity. The citizenship of the trustee and not the seat of the trust or

---

[22] Scott, Trusts, § 244 *et seq.* and § 268.

[23] Scott, Trusts, § 267 *et seq.* See *Ballentine* v. *Eaton,* 297 Mass. 389, 8 N. E. 2d 808; *O'Brien* v. *Jackson,* 167 N. Y. 31, 60 N. E. 238.

the residence of the beneficiary is the controlling factor.[24] The trustee is suable like any other obligor. There is no provision of the federal Constitution which forbids suits in state courts against a resident trustee of a trust created under the laws of a sister state. Consequently, we must conclude that Rhode Island does offer benefit and protection through its law to the resident trustee as the owner of intangibles. And, while it may logically be urged that these benefits and protection are no more than is offered a resident owner of land or chattels, permanently out of the state, the same reasons, hereinbefore stated on pages 492 and 493, apply that permit state property taxation of a resident owner of intangibles while denying a state power to tax similarly the resident's out-of-state realty.

No precedent from this Court called to our attention indicates that the federal Constitution contains provisions that forbid taxation by a state of intangibles in the hands of a resident testamentary trustee. In *Brooke* v. *Norfolk,* 277 U. S. 27, the state property tax there invalidated, evidently as violative of the Fourteenth Amendment, was assessed to a life beneficiary, on a *res,* composed of intangibles, when both the testator and the trustee were residents of another state where the trust was administered. *Safe Deposit and Trust Company* v. *Virginia,* 280 U. S. 83, held invalid a state's tax on a trust's intangibles, actually in the hands of the nonresident trustee and not subject to the control of the equitable owner, because it was an attempt to tax the trust *res,* intangibles actually in the hands of a nonresident trustee. This was said to conflict with the Fourteenth Amendment as a tax on a thing beyond the jurisdiction of the taxing state.[25] See also

---

[24] *Bullard* v. *Cisco,* 290 U. S. 179, 190. See *Memphis Street R. Co.* v. *Moore,* 243 U. S. 299.

[25] The power of a state to tax the equitable interest of a beneficiary in such circumstances was not presented. *Id.,* pp. 92 and 95.

*Graves* v. *Schmidlapp,* 315 U. S. 657, 663, where the sovereign power of taxation was held to extend to a state resident who by will disposed of intangibles held by him as trustee with power of testamentary disposition under a nonresident trust. Nothing in these cases leads to the conclusion that a state may not tax intangibles in the hands of a resident trustee of an out-of-state trust.[26]

State courts construe their statutes according to their understanding of state policy and apply them to such situations as their interpretation of the statutory language requires. In so adjudging, they are the final judicial authority upon the meaning of their state law. It is only in circumstances where their judgments collide with rights secured by the federal Constitution that we have power to protect or enforce the federal rights. In adjudging the taxability under state law of a resident trustee's ownership of intangibles, without reliance upon the residence of settlor or beneficiary or the location of the intangibles, various conclusions have been reached under state law and without regard to the Constitution of the United States. They are pertinent to our problem only as illustrations of the different viewpoints of state law.[27]

---

[26] *Goodsite* v. *Lane,* 139 F. 593 (C. C. A. 6th), holds that a state property tax on a trustee's intangibles for the sole reason that he resides in the taxing state is invalid. It would seem this was so decided because of the Fourteenth Amendment. We do not think this case gives proper recognition to the state's power to tax the owner of the legal title to the *res.*

[27] The state statute taxing property to the trustee validly applies to the resident trustee: *Welch* v. *City of Boston,* 221 Mass. 155, 109 N. E. 174; *Harvard Trust Co.* v. *Commissioner of Taxation,* 284 Mass. 225, 230, 187 N. E. 596, 598; *Mackay* v. *San Francisco,* 128 Cal. 678, 61 P. 382; *Millsaps* v. *Jackson,* 78 Miss. 537, 30 So. 756; *McLellan* v. *Concord,* 78 N. H. 89, 97 A. 552; *Florida* v. *Beardsley,* 77 Fla. 803, 82 So. 794.

The state tax statute is inapplicable to the resident trustee: *Dorrance's Estate,* 333 Pa. 162, 3 A. 2d 682; *Commonwealth* v. *Peebles,*

Nor do we think it constitutionally significant that the Rhode Island trustee is not the sole trustee of the New York trust. The assessment, as the statute in question required, was only upon his proportionate interest, as a trustee, in the *res*. Whatever may have been the character of his title to the intangibles [28] or the limitations on his sole administrative power over the trust,[29] the resident trustee was the possessor of an interest in the intangibles, sufficient, as we have explained, to support a proportional tax for the benefit and protection afforded to that interest by Rhode Island.[30]

*Affirmed.*

MR. JUSTICE FRANKFURTER, concurring.

In view of the dissents elicited by the Court's opinion, I should like to state why I join it.

Rhode Island taxes its permanent residents in proportion to the value of their property. The State imposes the tax whether its residents own property outright or

---

134 Ky. 121, 135, 119 S. W. 774, 778; *Darrow* v. *Coleman,* 119 N. Y. 137, 23 N. E. 488; *Rand* v. *Pittsfield,* 70 N. H. 530, 49 A. 88. *Newcomb* v. *Paige,* 224 Mass. 516, 113 N. E. 458, and *Harrison* v. *Commissioner,* 272 Mass. 422, 172 N. E. 605, declined taxation on the ground of comity and thus distinguished *Welch* v. *City of Boston, supra,* 272 Mass. 428–29, 172 N. E. 609.

[28] Scott, Trusts, §§ 88.1, 103; Bogert, Trusts and Trustees, § 145.

[29] Scott, Trusts, § 194; *Brennan* v. *Willson,* 71 N. Y. 502; *Fritz* v. *City Trust Co.,* 72 App. Div. 532, 76 N. Y. S. 625, aff. 173 N. Y. 622, 66 N. E. 1109; *In re Campbell's Estate,* 171 Misc. 750, 13 N. Y. S. 2d 773.

[30] The state courts have reached varying conclusions under their statutes: See *People ex rel. Beaman* v. *Feitner,* 168 N. Y. 360, 61 N. E. 280; *Mackay* v. *San Francisco,* 128 Cal. 678, 61 P. 382; *McLellan* v. *Concord,* 78 N. H. 89, 97 A. 552; *Dorrance's Estate,* 333 Pa. 162, 3 A. 2d 682; *Newcomb* v. *Paige,* 224 Mass. 516, 113 N. E. 458; *Harrison* v. *Commissioner,* 272 Mass. 422, 430–31, 172 N. E. 605, 609–10.

own it, legally speaking, in a fiduciary capacity. It is not questioned that the intangible assets in controversy could be included in the measure of the tax against the person of this trustee if he owned them outright. The doctrine that the power of taxation does not extend to chattels permanently situated outside a State though the owner was within it, *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194; *Frick* v. *Pennsylvania*, 268 U. S. 473, is inapplicable. The tax is challenged, as wanting in "due process," because the Rhode Island resident is merely trustee of these intangibles and the pieces of paper that evidence them are kept outside the State.

Rhode Island's system of taxing its residents—subjecting them to the same measure for ascertaining their ability to pay whether they hold property for themselves or for others—long antedated the Fourteenth Amendment. Rhode Island has imposed this tax, "it may be presumed, for the general advantages of living within the jurisdiction." *Fidelity & Columbia Trust Co.* v. *Louisville*, 245 U. S. 54, 58. It can hardly be deemed irrational to say, as Rhode Island apparently has said for a hundred years, that those advantages may be roughly measured, for fiscal purposes, by the wealth which a person controls, whatever his ultimate beneficial interest in the property. "The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of law all exactly alike." *Jackman* v. *Rosenbaum Co.*, 260 U. S. 22, 31.

In any event, Rhode Island could in terms tax its residents for acting as trustees, and determine the amount of the tax as though a trustee owned his trust estate outright. Rhode Island has, in effect, done so by treating all Rhode Island residents alike in relation to their property holdings, regardless of their beneficial interests. That is the practical operation of the statute. It is that which con-

trols constitutionality, and not the form in which a State has cast a tax. *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 280; *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 443 *et seq.* Whether a Rhode Island trustee can go against his trust estate for the amount of the tax which Rhode Island exacts from him is of no concern to Rhode Island. Rhode Island's power to tax its residents is not contingent upon it. A trusteeship is a free undertaking.

MR. JUSTICE JACKSON, dissenting.

If Rhode Island had laid a tax on one of its citizens individually, I should think it unassailable even if the basis for taxing him was that he held this trusteeship, and perhaps the tax on him could be measured by the value of the trust estate. In that case the state would tax only its own citizen. One is pretty much at the mercy of his own state as to the events or relationship for which it will tax him. If it wants to make the holding of a trusteeship taxable, I know of no federal grounds of objection. But that is not what is being done, nor what this decision authorizes.

If Rhode Island had taxed the individual, he might have sought reimbursement from the estate. Whether the estate was chargeable would be left to determination by the courts of the state supervising the trust. They might consider the nature of the tax to be a personal charge, as an income tax would doubtless be. Or they might find it to be an expense of administration, such as a transfer tax, and properly to be borne by the fund. But here no such decision is left to the courts which control the fund— the tax is laid on the trustee as such—the estate is the taxpayer.

Rhode Island claims the power to tax the estate solely because one of its trustees resides in that state. No property is in Rhode Island and its courts are not supervising administration of the trust. The estate is wholly located

in New York and the trustees derive their authority, powers and title from its courts and to them must account.

I had not supposed that a trust fund became taxable in every state in which one of its trustees may reside. Of course, in this instance it is proposed to tax only one-half of the estate as only one of the two trustees is resident in Rhode Island. But this seems to be an act of grace if there is a right to tax at all. The trustee has no power over, or title to, any fraction of the trust property that he does not have over all of it. If mere residence of a trustee is such a conductor of state authority that through him it reaches the estate, I see no reason why it should stop at a part, nor indeed why a trustee subject to the taxing power of several states, *Cf. Texas* v. *Florida*, 306 U. S. 398, may not also subject the trust fund to several state taxes by merely moving about.

The decision is a hard blow to the practice of naming individual trustees. It seems to me that there is no power in the state to lay the tax on the trust funds, despite unquestionable authority to tax its own citizen-trustee individually.

MR. JUSTICE MURPHY joins in this opinion.

MR. JUSTICE RUTLEDGE, with whom THE CHIEF JUSTICE concurs, dissenting.

I am in agreement with the views expressed by MR. JUSTICE JACKSON, except that I intimate no opinion concerning whether Rhode Island could lay a tax upon one of its residents for the privilege of acting as one of two or more trustees, when the state's only connection with the trust arises from the fact of his residence. This is not such a case.

Whether or not due process under the Fourteenth Amendment forbids state taxation of acts, transactions,

events or property is essentially a practical matter and one of degree, depending upon the existence of sufficient factual connections, having economic and legal effects, between the taxing state and the subject of the tax. I do not think the mere fact that one of a number of trustees resides in a state, without more, is a sufficiently substantial connection to justify a levy by that state upon the trust corpus, by an *ad valorem* tax either fractional or on the entirety of the *res*.

It may become necessary for claimants, beneficiaries or others to sue the trustee in Rhode Island or perhaps for him to join with other trustees in suing third persons there about trust matters. To that extent benefit and protection may be conferred upon the trust. But those needs may arise in connection with any sort of business or activity, trust or other, located and conducted outside the state as largely as this trust's affairs. I had not supposed that merely keeping open the state's courts to such claims would furnish a sufficient basis for bringing within its taxing grasp all property affected by the claims' assertion. That the trust *res* here consists of intangibles does not seem to me a sufficiently substantial factor, in the circumstances presented, to justify so wide a reach of the state's taxing arm.

*Mobilia sequuntur personam* has its appropriate uses for sustaining the states' taxing powers affecting residents and their extrastate interests. But when it is applied to the split ownership of a trust, not only as between trustee and beneficiary but also as among several trustees, to bring the trust *res* within the several states' powers of taxation, merely by virtue of the residence in each of one trustee and nothing more, the fiction I think is carried too far. Something more than affording a domiciliary basis for service of process, coupled with the split and qualified representative ownership of such a trustee,

should be required to sustain the state's power to tax the trust *res,* whether for all or only a fraction of its value.

Finally, whatever might be true of a single trustee or of several residing in a single state, I should doubt the thesis that the interest of one of two or more trustees in a trust is more substantial than that of a beneficiary or receives greater protection or benefit from the state of his residence. And if the beneficiary's residence alone is insufficient to sustain a state's power to tax the corpus of the trust, cf. *Brooke* v. *Norfolk,* 277 U. S. 27,[1] it would seem that the mere residence of one of a number of trustees hardly would supply a firmer foundation.

---

[1] But cf. Holmes, J., dissenting in *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, 96.