******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JONATHAN A. SOBEL *v.* COMMISSIONER
OF REVENUE SERVICES
(SC 20215)

Robinson, C. J., and Palmer, Mullins, Kahn, Ecker,
Vertefeuille and DiPentima, Js.

*Syllabus*

The plaintiff taxpayer appealed to the trial court from the decision of the
defendant, the Commissioner of Revenue Services, denying the plaintiff's
protest in connection with the defendant's denial of state income tax
credits that the plaintiff sought for nonresident income taxes paid to
the state of New York on the distributive share of profits that he received
for managing two limited partnerships. The plaintiff, who resided in
Connecticut but worked in New York, was a member of a limited liability
company, L Co., which served as the general manager for the limited
partnerships. The limited partnerships, which operated as hedge funds
and primarily traded their own stock index options, paid L Co. a share
of their profits for L Co.'s services, and L Co., in turn, allocated to the
plaintiff his distributive share of those profits. In 1997 and 1998, the
plaintiff reported the income he received from L Co. as capital gains
on his New York state income tax returns, paid taxes on that income
to New York, and sought a credit against his Connecticut resident income
taxes for the taxes he paid to New York during those years pursuant
to the statute (§ 12-704 [a] [1]) allowing a resident of this state to receive
a credit against nonresident income tax paid to another state when the
nonresident income being taxed would otherwise be subject to taxation
in Connecticut. The defendant disallowed the credit under § 12-704 (a)
(1), reasoning that the plaintiff's income must be treated as if it derived
from trading intangible property for his own account because the limited
partnerships were trading their own intangible property and the charac-
ter of the partnerships' income passed through to the income of their
general partner, and that Connecticut does not tax nonresidents on
income from the trading of intangible property for the nonresident's
own account pursuant to statute (§ 12-711 [f]). In sustaining the plaintiff's
appeal, the trial court first determined that, for purposes of § 12-711 (f),
the plaintiff was not trading intangible property for his own account
but was engaging in the trade or business of trading intangible property
owned by others, namely, the limited partnerships. The trial court also
determined that, even if the plaintiff was trading intangible property for
his own account, he nonetheless must be deemed to have been engaged
in a trade or business, pursuant to *Moller* v. *United States* (721 F.2d
801), on the basis of the frequency and volume of his trading activity,
which involved millions of transactions and approximately $250 million.
The trial court concluded, on the basis of either of those two grounds,
that the plaintiff would be taxed in Connecticut on such income and,
therefore, that he was entitled to the credits that he sought for the
nonresident income taxes he paid to New York. The defendant appealed,
claiming that the trial court incorrectly concluded that the plaintiff was
not trading intangible property for his own account but, rather, was
engaged in the trade or business of trading intangible property owned by
others. *Held* that the defendant's appeal was moot because the defendant
challenged only one of the trial court's two independent bases for its
determination that the plaintiff was entitled to the income tax credits
he sought, and, accordingly, his appeal was dismissed: the defendant
conceded that he challenged the trial court's judgment only on the issue
of whether the plaintiff was trading intangible property for his own
account, and, because he did not challenge the alternative ground on
which the trial court based its decision, namely, that, even if the plaintiff
was trading intangible property for his own account, the plaintiff none-
theless was deemed to have been engaged in a trade or business under
*Moller* on the basis of the frequency and volume of his trading activity,
there existed an unchallenged, independent basis for the trial court's
decision, and, therefore, there was no relief that this court could afford
the defendant; moreover, this court rejected the defendant's claim that

the trial court's determination under *Moller* did not constitute an alterna-
tive, independent basis for its decision, especially in view of the defen-
dant's concession in his posttrial brief to the trial court that the plaintiff
could be treated as if he were engaged in a trade or business under
*Moller* if he was engaged in substantial, daily trading activity.

Argued April 30—officially released November 19, 2019

*Procedural History*

Appeal from the defendant's assessment of certain personal income tax deficiencies against the plaintiff, brought to the Superior Court in the judicial district of New Britain, Tax Session, and tried to the court, *Schuman, J.*; judgment sustaining the plaintiff's appeal, from which the defendant appealed. *Appeal dismissed.*

*Philip Miller*, assistant attorney general, with whom were *Louis P. Bucari, Jr.*, and, on the brief, *George Jepsen*, former attorney general, for the appellant (defendant).

*Jonathan A. Sobel*, self-represented, with whom was *Jonathan M. Shapiro*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. This appeal arises from a dispute as to whether the income of a general partner who lives in Connecticut and manages intangible property owned by limited partnerships operating in New York constitutes income derived from trading intangible property for the general partner's own account, in which case it would be taxable in this state or, instead, constitutes income from a trade or business, in which case it would be taxable in New York. The plaintiff, Jonathan A. Sobel, who resided in Connecticut and worked in New York, was a member of a limited liability company that was the managing partner of two limited partnerships that operated as hedge funds. The plaintiff reported his income derived from the two partnerships on his Connecticut tax returns in 1997 and 1998, and sought a credit pursuant to General Statutes § 12-704 (a) (1)[1] for income taxes that he had paid on the income as a nonresident in New York. The defendant, the Commissioner of Revenue Services (commissioner), disallowed the credit after conducting an audit. Specifically, the commissioner concluded that the plaintiff was not entitled to a credit because (1) the plaintiff's income must be treated as if it derived from trading intangible property for his own account[2] because the limited partnerships were trading their own intangible property and the character of the partnerships' income passed through to the income of their general partner; see General Statutes §§ 12-712 (c) (1)[3] and 12-715 (b);[4] (2) Connecticut does not tax the income of nonresidents from trading intangible property for their own accounts; see General Statutes § 12-711 (f);[5] and (3) residents of this state are not entitled to a credit for income taxes paid in other states unless Connecticut would tax nonresident income of the same character. See General Statutes § 12-704 (a) (1). The plaintiff then filed a protest against the proposed income tax assessment. The commissioner denied the protest in relevant part. The plaintiff appealed from that denial to the trial court, which, after conducting a trial de novo, concluded on two independent grounds that the plaintiff was not trading intangible property for his own account but was engaged in the trade or business of trading intangible property owned by the limited partnerships. Accordingly, the court concluded that the plaintiff was entitled to a credit for the income tax that he paid in New York. The commissioner then filed this appeal,[6] in which he challenged only one of the two independent bases for the trial court's decision. After oral argument, this court, sua sponte, ordered the parties to submit supplemental briefs on the issue of whether the appeal was moot as a consequence of the commissioner's failure to challenge both grounds for the trial court's decision. See, e.g., *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017) ("[w]here an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if

this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims," and, therefore, appeal is moot [internal quotation marks omitted]). The commissioner contended in his supplemental brief that the appeal is not moot because there was only one basis for the trial court's ruling that the plaintiff was engaged in a trade or business, which he had challenged on appeal. The plaintiff contended in his supplemental brief that the appeal is moot. We agree with the plaintiff that the appeal is moot because the commissioner failed to challenge an independent basis for the trial court's ruling and that the appeal must therefore be dismissed.

The record reveals the following relevant facts, which were found by the trial court or are undisputed, and procedural history. The plaintiff and his brother, Peter Sobel, were the sole members of a limited partnership, Livingston Asset Management, LLC (LAM, LLC), which acted as the general partner of two limited partnerships, Livingston Asset Management, LP (LAM, LP), and Livingston International Fund, LP (LIF, LP). LAM, LP, and LIF, LP, were hedge funds, and the function of LAM, LLC, was to manage their assets. The limited partnerships made profits primarily from the trading of United States treasury bills and stock index options that were owned by the partnerships. LAM, LLC, received approximately 30 percent of the partnerships' profits, one half of which, in turn, was allocated to the plaintiff.

In 1997 and 1998, the plaintiff, who resided in Connecticut and worked in New York,[7] reported the income that he received from LAM, LLC, as capital gains on his federal and New York income tax returns, and he paid taxes on the income in those jurisdictions. The plaintiff also reported the income on his Connecticut tax return, and he sought a credit pursuant to § 12-704 (a) (1) for the income taxes that he had paid as a nonresident in New York. The commissioner concluded that, because the limited partnerships' profits were derived from trading intangible property for their own accounts, that income characterization must be passed through to the plaintiff. See General Statutes § 12-712 (c) (1) (character of partner's income is determined in accordance with § 12-715); General Statutes § 12-715 (b) ("[e]ach item of partnership . . . income . . . shall have the same character for a partner . . . as for federal income tax purposes"); see also 26 U.S.C. § 702 (b) (2012) (partner's income from distributive share has same character as if income were realized directly from source from which partnership realized income). Because Connecticut does not tax the income of nonresidents derived from trading intangible property for their own accounts; see General Statutes § 12-711 (f); the commissioner concluded that the plaintiff was not entitled to a credit for the income tax that he paid in New York. See General

Statutes § 12-704 (a) (1) (Connecticut resident may be allowed credit for income tax paid in another state only if same form of nonresident income would be taxable in Connecticut). The plaintiff then filed a protest against the proposed assessment, which the commissioner denied in relevant part.

The plaintiff appealed from the commissioner's decision to the trial court pursuant to General Statutes § 12-730, and the trial court conducted a trial de novo. Cf. *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003) ("[a] sales and use tax appeal taken pursuant to [General Statutes] § 12-422 is a trial de novo" [internal quotation marks omitted]). In his posttrial brief, the plaintiff contended that he was entitled to a credit for the income taxes that he paid in New York because his income was derived from the trade or business of trading intangible property owned by others, namely, the limited partnerships. The commissioner contended in his posttrial brief that, to the contrary, because the income of the limited partnerships was derived from the trading of intangible property for their own accounts, that character must be passed through to the income of their general partner, LAM, LLC, and, in turn, to the plaintiff's income.

The commissioner conceded, however, in his posttrial brief that, even if the trial court agreed with him that the plaintiff ordinarily would be deemed to have been trading intangible property for his own account, the plaintiff still could be treated as if he were engaged in a trade or business for state income tax purposes if he was engaged in "substantial, daily trading activity." The commissioner cited *Moller* v. *United States*, 721 F.2d 810 (Fed. Cir. 1983), cert. denied, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed. 2d 839 (1984), among other cases, in support of this proposition. See id., 813 ("[i]n determining whether a taxpayer who manages his own investments is a trader, and thus engaged in a trade or business, relevant considerations are the taxpayer's investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and regularity of the taxpayer's securities transactions"); see also *Stoller* v. *Commissioner of Internal Revenue*, T. C. Memo 1990-659, 60 T.C.M. (CCH) 1554, 1562, T.C.M. (P-H) P90,659 (T.C. 1990) ("[w]hen a taxpayer, in this case a partnership, is trading solely for its own account, the volume of trading must be very regular and substantial in order to rise to the level of a trade or business"), rev'd in part on other grounds, 994 F.2d 855 (D.C. Cir. 1993), amended, 3 F.3d 1576 (D.C. Cir. 1994).[8] The commissioner argued that the plaintiff's income could not be treated as if it derived from conducting a trade or business under the *Moller* line of cases because he had "not presented any evidence of any trading activity, other [than] his own vague testimony in which he claims he made a lot of trades."

The trial court agreed with the plaintiff that he was not trading for his own account but was in the trade or business of trading intangible property owned by others, namely, the limited partnerships. The trial court then observed that, "[i]n arguing that the plaintiff did not engage in a trade or business, the commissioner relies on a line of federal cases that distinguish[es] between persons trading securities who are investors and persons who engage in that activity as a trade or business, sometimes referred to as traders or day traders."[9] (Internal quotation marks omitted.) The court concluded that these cases were "inapplicable because they all involve persons who were investing their own money or their family's money," and the court already had concluded that the plaintiff was in the trade or business of managing property owned by others. The court also concluded, however, that, "*even under the standards urged by the commissioner*"—that is, even if the commissioner were correct that the plaintiff had to satisfy the *Moller* standard to be treated as if he were engaged in a trade or business because a general partner who trades intangible property belonging to the limited partnership ordinarily is deemed to be trading for his own account for state income tax purposes—the plaintiff still must be treated as if he were engaged in a trade or business because he "commuted every workday to an office where he worked long hours, met with clients and investors, engaged in millions of trades, and managed approximately $250 million of their money. The daily frequency and enormous volume of the plaintiff's trading activity clearly satisfy the day trading standards." (Emphasis added.) The trial court thus concluded *both* that (1) the plaintiff was engaged in the business of trading intangible property belonging to others, and (2) even if he ordinarily would be deemed to have been trading intangible property for his own account because the character of the partnerships' income producing activity passed through to him, he still must be treated as if he were conducting a trade or business under the *Moller* line of cases. For these reasons, the trial court concluded that the plaintiff was entitled to a credit for the income taxes that he paid in New York.[10]

This appeal followed. The commissioner contended in his main appellate brief that the trial court incorrectly determined that the plaintiff was not trading intangible property for his own account but was engaged in the trade or business of trading intangible property owned by others, namely, the limited partnerships.[11] The commissioner did not, however, challenge the trial court's ruling that, even if the plaintiff ordinarily would be deemed to be trading intangible property for his own account, he still could be deemed to have been engaged in a trade or business under the *Moller* standard. Accordingly, after oral argument, this court, sua sponte, ordered the parties to submit supplemental briefs on

the issues of whether the commissioner had challenged that independent basis for the trial court's ruling and, if not, whether the appeal therefore was moot under *State* v. *Lester*, supra, 324 Conn. 526–27.

The commissioner concedes in his supplemental brief that he did not challenge the trial court's conclusion that the plaintiff was engaged in a trade or business under *Moller* in his initial appellate brief. The commissioner contends, however, that the appeal is not moot because the trial court's conclusion does not provide an independent basis for its ruling that the plaintiff was engaged in a trade or business so as to make his income taxable in New York. Specifically, the commissioner contends that the trial court "could not and did not conclude that the plaintiff could receive income from trading for his own account and have that *same income* be considered income from property employed in a trade or business." (Emphasis in original.) As we explained, however, the commissioner conceded in his posttrial brief that, even if the trial court concluded that the plaintiff's conduct in trading the intangible property belonging to the limited partnerships ordinarily would be deemed to be trading for his own account, *that same conduct* could be treated as a trade or business if the court found that the plaintiff had satisfied the *Moller* standard, in which case the plaintiff would be entitled to a credit for the income taxes that he paid in New York.[12] Accordingly, it is entirely unclear to us why the commissioner now claims that the trial court "could not and did not" conclude that the plaintiff's trading of intangible property should be treated as a trade or business, even if the conduct ordinarily would be deemed to be trading for his own account.

To the extent that the commissioner claims that the trial court had no need to address the *Moller* issue because it already had concluded that the plaintiff was engaged in a trade or business of trading intangible property belonging to others, it is clear that the court's ruling pursuant to *Moller* was a ruling *in the alternative*, which is entirely proper.[13] To the extent that the commissioner contends that the *Moller* line of cases is relevant only to the issue of whether the stock index options were "*property employed* in a business, trade or profession" within the meaning of § 12-704(a)-4 (a) (3) of the Regulations of Connecticut State Agencies;[14] (emphasis added); which the court would not have needed to address if it had concluded that the plaintiff was trading intangible property for his own account, that claim is both illogical and inconsistent with the commissioner's position in his posttrial brief to the trial court. *Moller*, by its plain terms, provides a standard for determining whether an individual who is trading intangible property for his own account nevertheless may be treated as if he were *engaged in a trade or business*. Indeed, although the trial court discussed *Moller* in the portion of its memorandum of decision addressing the opera-

tion of § 12-704(a)-4 (a) (3), the court expressly stated that the *Moller* line of cases went to the issue of whether the plaintiff was engaged in a trade or business. It is also clear that the trial court found that the "trade or business" in which the plaintiff was engaged under *Moller* was trading the intangible property owned by the limited partnerships. Indeed, the commissioner does not suggest that the court found that the plaintiff was engaged in some *other* trade or business.

The commissioner also contends that, even if the plaintiff was engaged in a trade or business when he traded the intangible property owned by the limited partnerships for purposes of *Moller*, he still would not be entitled to a credit because the stock index options that he traded were not "property employed in a business, trade or profession . . . ." Regs., Conn. State Agencies § 12-704(a)-4 (a) (3). In his posttrial brief to the trial court, however, the commissioner contended only that the stock index options were not property employed in a trade or business *because the plaintiff was not engaged in a trade or business but was trading intangible property for his own account.* On appeal, the commissioner for the first time cites *Michaelson* v. *Tax Commission*, 67 N.Y.2d 579, 496 N.E.2d 674, 505 N.Y.S.2d 585 (1986), to support his claim that, even if the plaintiff *was* engaged in a trade or business, the plaintiff's income did not derive from property employed in the trade or business. In *Michaelson*, the New York Court of Appeals concluded that income derived from an increase in the market value of stock owned by the nonresident taxpayer between the time he exercised his option to purchase the stock and the time the stock was sold was not taxable "income . . . from property employed in a business, trade, profession, or occupation"; (internal quotation marks omitted) id., 583; but was nontaxable investment income. Id., 585. There was no claim in *Michaelson*, however, that the taxpayer should be deemed to be engaged in the trade or business of trading stock options, notwithstanding the fact that he owned the stock options at issue. Accordingly, we conclude that *Michaelson* has no bearing on the present case.

The commissioner also relies on § 12-711(b)-5 (b) of the Regulations of Connecticut State Agencies, which provides in relevant part: "Intangible personal property is employed in a business, trade, profession or occupation carried on in this state if such property's possession and control have been localized in connection with a business, trade, profession or occupation in Connecticut, so that the property's substantial use and value attach to and become an asset of such business, trade, profession or occupation. . . ." Section 12-711(b)-5 (b) then provides the following two examples of intangible property owned by a nonresident being employed by a business in this state: (1) "a nonresident pledges stocks, bonds or other intangible personal property in Connect-

icut as security for the payment of indebtedness incurred in connection with a business being carried on in Connecticut by the nonresident"; and (2) "a nonresident maintains a branch office in Connecticut and an interest-bearing checking account on which the agent in charge of the branch office may draw checks for the payment of expenses in connection with the activities in this state." The commissioner points out that the circumstances of the present case do not conform to either example and, therefore, contends that Connecticut would not tax a nonresident's income that had the same character as the plaintiff's.

The commissioner fails to recognize, however, that it follows from the trial court's conclusion that the plaintiff must be treated as if he were engaged in a trade or business—either because he was trading intangible property owned by others[15] or because he must be deemed to have been trading intangible property for his own account but satisfied the *Moller* standard—that he also must be treated as if he did not personally own the intangible property that he traded. This is because, for state income tax purposes, the concepts of operating a trade or business and trading intangible property for one's own account, which is defined as trading one's own property; see footnote 2 of this opinion; are mutually exclusive. Because the plaintiff was deemed not to own the intangible property, the property could not be tied to the plaintiff's domicile in Connecticut; see footnote 5 of this opinion; and, therefore, income derived from the property could not be taxed in this state. Put another way, it was implicit in the trial court's ruling that the plaintiff's trading activities constituted a trade or business, and the income from those activities should be taxed in the locale where they took place. See Regs., Conn. State Agencies § 12-711(b)-4 (a) (1) (income attributable to business, trade, profession or occupation carried on in Connecticut is taxable in Connecticut).

To the extent that the commissioner contends that the trial court "could not and did not" conclude that the plaintiff's trading activities on behalf of the limited partnerships constituted a trade or business under *Moller* because, under § 12-711(f)-1 (a) of the Regulations of Connecticut State Agencies,[16] income from trading intangible property for one's own account can *never* be treated as income from a trade or business, that position is also inconsistent with the position that the commissioner took in his posttrial brief. Specifically, the commissioner conceded that, if the plaintiff satisfied the *Moller* standard, he could be deemed *not* to be trading for his own account, in which case § 12-711(f)-1 (a) simply would not apply. Although § 12-711(f)-1 (a) expressly provides that a nonresident's income from trading for his own account shall not be included in his Connecticut adjusted gross income derived from engaging in a trade or business, it does not expressly

prohibit the commissioner from ever treating income from trading intangible property for one's own account as if it were income derived from a trade or business. In any event, the argument that this court should conclude that the trial court's ruling that the plaintiff was engaged in a trade or business under the *Moller* standard was not an independent basis for its decision because any such ruling would have been self-evidently *incorrect* amounts to a back door attempt to challenge the ruling, which the commissioner contends he had no reason to do because the ruling was not an independent ground for the trial court's decision in the first instance. Thus, this argument is circular and constitutes an attempt to end-run the principle that the failure to challenge an independent basis for the trial court's ruling on appeal renders the appeal moot.[17] See *State* v. *Lester*, supra, 324 Conn. 526–27.

The commissioner finally contends that the notion that the trial court's ruling pursuant to *Moller* provides an independent basis for its decision is belied by the fact that the plaintiff made no claim in his initial appellee's brief that he could be deemed to be engaged in a trade or business pursuant to the *Moller* line of cases, even if this court concluded that a general partner who trades intangible property owned by the limited partnerships is ordinarily deemed to be trading property on his own account. We disagree. For the reasons that we already explained, it is clear to us that the trial court's ruling pursuant to *Moller* provided an independent basis for its conclusion that the plaintiff was engaged in a trade or business. Indeed, although the commissioner expounds at length as to the reasons that he believes the trial court's ruling pursuant to *Moller* did not constitute an independent basis for its decision that the plaintiff was not trading intangible property for his own account but, instead, was engaged in a trade or business, he provides no convincing reasons why the trial court would have had any reason to address *Moller* if it did not provide an independent basis for its decision. Having reached this conclusion, we decline to speculate as to why the plaintiff did not alert this court to this alternative ground for the trial court's ruling in his main brief. The commissioner has provided no authority for the proposition that, if an appellee fails to claim on appeal that the appellant has not challenged an independent basis for the trial court's decision, the reviewing court may presume either that the appellee believes that there was no valid independent basis or, if there was one, that the appellee has waived any reliance on it. Indeed, we also note that, because mootness implicates the court's subject matter jurisdiction, it cannot be waived. See, e.g., *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 222, 982 A.2d 1053 (2009).

We conclude that, contrary to the commissioner's contention, the trial court's ruling pursuant to *Moller* was an independent basis for its conclusion that the

plaintiff was engaged in a trade or business when he traded intangible property owned by the limited partnerships, and, therefore, the plaintiff was entitled to a credit for the income tax that he paid in New York. The commissioner makes no claim that, if this court concludes that the trial court's ruling pursuant to *Moller* provides an independent basis for the trial court's decision, the appeal would not be moot as the result of the commissioner's failure to challenge the ruling on appeal pursuant to *State* v. *Lester*, supra, 324 Conn. 526–27. We conclude, therefore, that the appeal must be dismissed as moot.

The appeal is dismissed.

In this opinion the other justices concurred.

[1] General Statutes § 12-704 (a) (1) provides: "Any resident or part-year resident of this state shall be allowed a credit against the tax otherwise due under this chapter in the amount of any income tax imposed on such resident or part-year resident for the taxable year by another state of the United States or a political subdivision thereof or the District of Columbia on income derived from sources therein and which is also subject to tax under this chapter."

[2] The parties agree that trading for one's own account means trading property that one owns.

[3] General Statutes § 12-712 (c) (1) provides: "The character of partnership or corporation items for a nonresident partner or S corporation shareholder shall be determined in accordance with section 12-715."

[4] General Statutes § 12-715 (b) provides in relevant part: "Each item of partnership . . . income, gain, loss or deduction shall have the same character for a partner . . . as for federal income tax purposes. . . ."

For federal income tax purposes, "[t]he character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share . . . shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." 26 U.S.C. § 702 (b) (2012).

[5] General Statutes § 12-711 (f) provides: "Any nonresident, other than a dealer holding property primarily for sale to customers in the ordinary course of his trade or business, shall not be deemed to carry on a trade, business, profession or occupation in this state solely by reason of the purchase or sale of intangible property or the purchase, sale or writing of stock option contracts, or both, for his own account." See also Regs., Conn. State Agencies § 12-711(f)-1 (a) ("[w]here a nonresident individual who is not a dealer buys and sells property, or buys, sells or writes stock option contracts, or both, for his or her own account, such nonresident individual is not deemed to be carrying on a business, trade, profession or occupation within Connecticut").

Income derived from the purchase and sale of intangible property owned by the taxpayer is sourced to the state of the taxpayer's domicile because intangible property has "no real situs . . . ." *Greenough* v. *Tax Assessors*, 331 U.S. 486, 493, 67 S. Ct. 1400, 91 L. Ed. 1621 (1947); see id. ("[s]ince the intangibles themselves have no real situs, the domicile of the owner is the nearest approximation").

[6] The commissioner appealed to the Appellate Court, and we subsequently granted his motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[7] The plaintiff claims that he became a resident of New York in July, 1998. See footnote 11 of this opinion. Because this claim has no bearing on the issue before us, we assume for purposes of this opinion that he was a resident of Connecticut during the relevant time period.

[8] As far as we have been able to determine, the plaintiff did not cite to the *Moller* line of cases in the proceedings before the trial court.

[9] As we have explained, the commissioner did not rely on the *Moller* line of cases to *support* his position that the plaintiff was trading intangible property for his own account. Rather, because the application of this line of cases could only be unfavorable to the commissioner in that it provided an alternative route to the conclusion that the plaintiff was engaged in a trade or business, it is reasonable to presume that the commissioner cited

*Moller* in furtherance of his duty to bring adverse authority to the attention of the trial court. See Rules of Professional Conduct 3.3 (a) (2) ("[a] lawyer shall not knowingly . . . [f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").

[10] Thus, the trial court effectively concluded that, even if the commissioner were correct that the partnerships' income ordinarily would be considered to derive from trading intangible property on their own accounts, and even if the commissioner were correct that that character would pass through to the plaintiff pursuant to § 12-715 (b) so that the plaintiff ordinarily would be deemed to be trading on his own account, the volume of trading was sufficiently regular and substantial to compel the conclusion that *both* the partnerships *and* the plaintiff must be deemed to be engaged in a trade or business under *Moller*.

[11] The commissioner also challenged the trial court's ruling that, even if the plaintiff was not entitled to a credit for the income taxes that he paid in New York because he was trading intangible property for his own account, he was entitled to a reduction in his income tax assessment for 1998 because he became a resident of New York in July of that year. The trial court apparently believed that it was not required to reach this issue in light of its conclusion that the plaintiff was entitled to a credit, and it addressed the issue only in the event that the reviewing court found it necessary to reach the issue on appeal. In his brief, the plaintiff also characterizes this claim in his main appellate brief as an "alternative argument." Accordingly, because we conclude that the commissioner's appeal from the trial court's ruling that the plaintiff was entitled to a credit must be dismissed as moot, we need not address the domicile issue.

[12] The commissioner stated in his posttrial brief that the fact that the plaintiff must be deemed under state income tax law to be trading intangible property for his own account was "not the end of the analysis, as there are certain situations in which a general partner may be deemed to be engaged in a trade or business separate and apart from that of the partnership." The commissioner then quoted the standard set forth in § 12-711(c)-2 of the Regulations of Connecticut State Agencies for determining whether an activity constitutes a trade or business, and noted that, under § 12-711(f)-1 (a) of the regulations, a nonresident who sells stock option contracts for his own account is deemed not to be carrying on a business. See Regs., Conn. State Agencies § 12-711(f)-1 (a) ("[w]here a nonresident individual who is not a dealer buys and sells property, or buys, sells or writes stock option contracts, or both, for his or her own account, such nonresident individual is not deemed to be carrying on a business, trade, profession or occupation within Connecticut"). The commissioner stated that, "[a]ccordingly, *other than trading for one's own account*, a taxpayer will be entitled to a credit for tax paid to another jurisdiction if the taxpayer maintains an office in said jurisdiction and systematically and regularly conducts its affairs in said jurisdiction or conducts its business with a fair measure of permanency and continuity." (Emphasis added.) The commissioner then observed that, under the *Moller* line of cases, a taxpayer who trades intangible property for his own account and who would, therefore, ordinarily be deemed *not* to be engaged in a trade or business, may nevertheless be deemed to be engaged in a trade or business if the taxpayer engages in "substantial, daily trading activity."

In his supplemental brief to this court, the commissioner appears to contend that a conclusion that the plaintiff must be deemed to have been trading intangible property for his own account *is* the end of the analysis, because there are no circumstances under which that activity can be deemed to be a trade or business under Connecticut law. Although this position is consistent with the commissioner's statement in his posttrial brief that the activity of trading for one's own account is *excepted* from the regulatory standard for determining whether an activity is a trade or business, there would have been no reason for the commissioner to discuss the *Moller* line of cases in this context unless he believed that the cases provided an exception to that exception. Moreover, that position would be consistent with the commissioner's statement in his posttrial brief that a determination that the plaintiff was trading intangible property for his own account was *not* the end of the analysis. Accordingly, although the commissioner's posttrial brief is not a model of clarity, the most reasonable reading is that the commissioner conceded that, even if the plaintiff ordinarily would be deemed to be trading for his own account when he traded intangible property belonging to the partnerships, if the plaintiff could satisfy the *Moller* standard, he

could be deemed to be engaged in a trade or business and, therefore, would be entitled to a credit.

[13] In other words, contrary to the commissioner's suggestion, the trial court did not conclude that the plaintiff was *both* trading for his own account *and* engaged in a trade or business. Rather, the court concluded that, even if the commissioner were correct that the plaintiff would ordinarily be deemed to be trading intangible property for his own account, the income from which would be taxable in Connecticut, the plaintiff *should be deemed not to be trading on his own account* because his trading activities met the *Moller* standard for engaging in a trade or business, the income from which was taxable in New York.

[14] Section 12-704(a)-4 (a) (3) of the Regulations of Connecticut State Agencies provides in relevant part: "[T]he credit is not allowed for tax imposed by another jurisdiction upon income from intangibles, except where such income is from property employed in a business, trade or profession carried on in the other jurisdiction. . . ."

[15] To the extent that the commissioner suggests that the trial court's conclusion that the plaintiff's income did not derive from trading intangible property for his own account because he was trading intangible property owned by the limited partnerships did not imply that the plaintiff's income derived from a trade or business, he has not explained how, if the plaintiff's income derived neither from trading intangible property for his own account nor from a trade or business, the source of the income should be characterized.

[16] Section 12-711(f)-1 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "If the nonresident individual is otherwise carrying on a business, trade, profession or occupation within Connecticut, his or her income from buying and selling property, or buying, selling or writing stock option contracts, or both, for his or her own account, shall not be included in Connecticut adjusted gross income derived from or connected with sources within this state."

[17] We note that, because the commissioner conceded in his posttrial brief that the trial court could conclude that the plaintiff's trading of intangible property owned by the limited partnerships constituted a trade or business if the plaintiff presented sufficient evidence to satisfy the *Moller* standard, it would appear that any error by the trial court in applying the *Moller* standard was induced by the commissioner, and, therefore, any challenge to the ruling on grounds other than evidentiary insufficiency likely would have been unreviewable, even if the commissioner had raised the challenge in his main appellate brief. See *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004).

We emphasize that we express no opinion as to whether the trial court correctly applied the *Moller* standard to determine the geographical source of the plaintiff's income for state income tax purposes. We note that *Moller* involved a federal income tax statute that allowed a deduction for business expenses attributable to the maintenance of an office in the taxpayer's personal residence when the office is the "principal place of business for any trade or business of the taxpayer." (Internal quotation marks omitted.) *Moller* v. *United States*, supra, 721 F.2d 812. It is far from self-evident that a standard designed to determine whether a taxpayer who is trading for his own account is entitled to certain federal income tax deductions that are available only to a trade or a business may also be used to determine the source of a taxpayer's income for state income tax purposes. Regardless of whether the trial court's ruling pursuant to *Moller* was correct, however, we conclude that the ruling was an independent basis for the trial court's decision, and the commissioner did not, and likely could not, challenge the ruling on appeal.